Parker, J.
 

 Whether the complaint should have .been dismissed after the evidence was all in on the ground that the negligence of the plaintiff’s intestate contributed to the accident the which we shall discuss on this review,
 

 
 *274
 
 In its disposition we shall consider first whether, assuming the intestate to have been
 
 sui juris,
 
 the evidence adduced authorizes the jury to find that plaintiff’s intestate was free from contributory negligence. If not, whether the fact that the intestate was only a little over twelve years of age, considered in connection with the other circumstances proven, could .be permitted to effect a different result.
 

 The plaintiff in order to recover for the damages sustained by the killing of his intestate, which was occasioned by his being run over and killed by a locomotive on the defendant’s road while crossing its tracks on Smith street in the city of Buffalo, was burdened with the necessity of proving first, that the defendant was guilty of negligence, and second, that he was free from all fault contributing to that result.
 

 The law requires a traveler before crossing a railroad track on a public highway to look and listen for the approach of trains.. If he omit to do so and suffers injury while crossing, he can not recover because of such omission. That which it is his duty to do, he, or in the case of death, his representative, must in an action to recover for damages sustained prove was done, or at least must prove facts from which the inference can reasonably be drawn that he performed his duty in that respect. It will not be presumed that he looked; it must be proven. The plaintiff attempted to meet this requirement by the evidence of a witness who testified that before the intestate crossed the track, in the doing of which he was struck by the locomotive and killed, he stopped in the center of the switch track eleven feet from the north rail of the track upon which the locomotive was running and shifted the bag which he was carrying from one shoulder to the other, resting it upon the bumper of a car standing on the track as he did so, and that at this time his face was turned in the direction of the approaching engine. He then passed, on in a southerly direction for the distant of about fourteen feet, when he was struck.
 

 The witness further testified that after changing the bag from one shoulder to the other he did not again turn his head to the left, as it would have been necessary for him to do in order to see the approaching locomotive. It is urged that inasmuch as it appears that his face was turned in the direction from whence the locomotive came that a jury could be permitted to find that he did look and thus observed that measure of care and caution which the situation imposed. We are unable to agree with that contention, for it appears that from the place where he was standing it was possible to see along the track a distance of 186 feet; that when he reached the south rail of the switch track, a distance of eight feet and five inches from the north rail of the track upon which the locomotive was running, he could see for two streets away, and that before reaching such rail the view was unobstructed for nearly a mile. It seems to be clear, therefore, that the plaintiff did not meet the burden resting upon him by merely showing that his face was turned in that direction, for if he had looked he must have seen this engine approaching. But if the inference was permissible that he looked at the moment of chaug
 
 *275
 
 ing the bag, it does not meet the requirements of the case. He had still six tracks to cross and was then eleven feet from the south rail of the first track. To look then, and not again, to go on from that point without observing the further precaution of watching, for the approach of trains upon tracks almost constantly in use, was not a proper observance of the care which it was his duty to exercise.
 
 Cullen
 
 v.
 
 D. & H. C. Co.,
 
 113 N. Y., 668; 23 N. Y. State Rep., 719;
 
 Cordell
 
 v.
 
 N. Y. C. & H. R. R. R. Co.,
 
 70 N. Y., 119;
 
 Woodard
 
 v.
 
 N. Y., L. E. & W. R. R. Co.,
 
 106 id., 369; 11 N. Y. State Rep., 169;
 
 Young
 
 v.
 
 N. Y., L. E. & W. R. R. Co.,
 
 107 N. Y., 500; 12 N. Y. State Rep., 285.
 

 And this the plaintiff’s intestate did according to the evidence of the witness Martin, who was called by the plaintiff to prove that at the moment of shifting the bag Tucker was facing in the direction of the approaching locomotive. Indeed, it must have been so, for had he looked at any moment before reaching the track he would have observed its coming.
 

 It appears that the wind was blowing severely, and snow was falling rapidly, and it is suggested that by reason thereof he may have been prevented from seeing the approaching locomotive, but the evidence introduced on the part of the plaintiff shows that such was not the fact. There were two little girls on the cars at the crossing at the point where the boy stood when shifting the bag from one shoulder to the other, and they saw the locomotive coming. Frank Surrnes was on Smith street near the place of the accident at the time of its occurrence, and he testified that he saw it approaching when it was at Oneida street. The witness Martin also saw it when 350 feet distant. Ho witness pretends that it could not be seen," and no room exists for the inference that the plaintiff’s intestate could not have seen it had he looked.
 

 We are thus led to the conclusion that there was no evidence authorizing the jury to find that the plaintiff observed that degree of care and caution which the law imposes on one while in the act of crossing railroad tracks on a public street. If he had been an adult, therefore, it would have been the duty of the court- to have dismissed the complaint. Does a different rule apply because the intestate was a boy only a little over twelve years of age ? An infant of tender years is not expected to exercise the same care and caution which is required of a person of more advanced age, so that it frequently becomes a question for the jury under proper instructions by the court whether a child exercised that measure of care and caution which should be required and expected from it
 

 In the case of
 
 McGovern v. N. Y. C. & H. R. R. R. Co.,
 
 67 N. Y., 417, a boy eight years of age while crossing a railroad track was struck by a backing engine and killed. In that casé this court held that it was a question for the jury to determine whether he exercised that degree of care and circumspection which a child of his years and maturity of judgment would be expected to exercise.
 

 In the case of
 
 Wendell v. N. Y. C. & H. R. R. R. Co.,
 
 91 N. Y., 420, the plaintiff’s intestate, a boy of seven years of age, was held to have been guilty of culpable negligence, it appearing
 
 *276
 
 that he was a bright, active boy, capable of understanding the peril of the situation which he recklessly encountered, resulting-in his death.
 

 In
 
 Stone
 
 v.
 
 Dry Dock Railroad Co.,
 
 115 N. Y., 104; 23 N. Y. State Rep., 551, the plaintiff’s intestate, a child of seven years, was run over by a street car, and in that case it was held that he could not be deemed, as a matter of law, to be
 
 sui juris
 
 so as to be chargeable with negligence, but that it presented a question for the jury.
 

 In the
 
 Reynolds
 
 case 58 N. Y., 248, a bright and intelligent boy, thirteen years of age, was killed while crossing a railroad track. The summer before he had worked on a farm and received $13 a month and board for his services, but at the time of the accident he was living at home attending school. The plaintiff was unable to show that his intestate observed that care which was required of persons crossing a railroad track, and the court, having under consideration the distinction which the law makes between those who are
 
 sui juris
 
 and
 
 non sui juris,
 
 held that the plaintiff should have been nonsuited.
 

 The fact that the boy Tucker was twelve years old, intelligent, accustomed to attend school and assist the family by his labor, and lived near the railroad, seems to bring this case within the rule of the
 
 Reynolds
 
 case; indeed we see no opportunity to distinguish them.
 

 In
 
 Nagle
 
 v.
 
 A. V. R. R.,
 
 88 Penn. St, 35, the court, in considering the age at which an infant should be presumed to be
 
 sui juris,
 
 say: “ The law fixes no arbitrary period when the immunity of childhood ceases and the responsibilities of life begin. For some purposes majority is the rule. It is not' so here. It would be irrational to hold that a man was responsible for his negligence at twenty-one years of age and not responsible a day or a week prior thereto. At what age, then, must an infant’s responsibility for negligence be presumed to commence ? This question cannot be answered by referring it to a jury. That would furnish us with no rule whatever. It would give us a mere shifting standard, affected by the sympathies or prejudices of the jury in each particular case. One jury would fix the period of responsibility at fourteen, another at twenty or twenty-one. This is not a question of fact for the jury; it is a question of law for the court Hor is its solution difficult The rights, •duties and responsibilities of infants are clearly defined by the text writers as well as by numerous decisions. We have seen that the law presumes that at fourteen years of age an infant has sufficient discretion and understanding to select a guardian and contract a marriage, is capable of harboring malice and of taking human life under circumstances that constitute the offense of murder. It, therefore, requires no strain to hold that at fourteen an infant is presumed to have sufficient capacity and understanding to be sensible of danger, and to have the power to avoid it And this presumption ought to stand until it is overthrown by clear proof of the absence of such discretion and intelligence as is usual with infants of fourteen years of age.”
 

 
 *277
 
 • The Penal Code provides that when an infant is charged with crime, upon the prosecution rests the burden of showing that the defendant has sufficient intelligence and maturity of judgment to render him capable of harboring a criminal intent until the age of twelve years, at which time the presumption of incapacity ceases. How, while this statute does not undertake to prescribe and does not necessarily affect the rule to be applied in civil actions, it suggests, as asserted in the
 
 Nagle
 
 case, an age to which the courts can with safety limit the presumption of incapacity on the part of an infant to appreciate the perils incident to crossing railroad tracks. This presumption may in a proper case be so far overborne by evidence as to present a question for the jury. But in the absence of evidence tending to show that an injured infant twelve years old was not qualified to understand the danger and appreciate the necessity for observing, that degree of caution in crossing a railroad track which an adult would, he must be deemed
 
 sui juris.
 

 Ho attempt was made to prove that the plaintiff’s intestate was not a boy of average intelligence and experience, or that for any reason he could not fully appreciate the risks to be encountered in making the crossing without looking and listening for the approach of trains. Under the evidence, therefore, he must be held to be
 
 sui juris
 
 and chargeable with the same measure of caution as an adult
 

 The views expressed lead to the conclusion that the judgment should be reversed.
 

 All concur, except Bradley and Vann, JJ., dissenting.