Sarah Rainey, as Administratrix, etc., of John H. Rainey, Deceased, Respondent, *v.* The New York Central and Hudson River Railroad Company, Appellant.

*Injury at a railroad grade crossing — violation of a city ordinance — failure to operate gates at night — evidence as to ringing of locomotive bell — contributory negligence.*

In an action against a railroad company to recover damages for a personal injury, proof of the violation of a city ordinance by the railroad company does not establish a cause of action against the violator, but it is evidence bearing upon the question of negligence.

A city ordinance required a railroad company to maintain gates at its grade crossings and to attend them at all times when trains were passing and close them at least one minute before a locomotive passed. In an action against the railroad company to recover the damages resulting from a person's death, alleged to have been caused by one of its trains at a grade crossing, it was shown that the gates were left open, without the presence of a gateman, between seven at night and seven in the morning, between which hours the accident occurred.

*Held,* that this circumstance was not sufficient to sustain a judgment on the ground of negligence based upon it, where there was no evidence that the trains were run at an unusual rate of speed; that the vicinity was thickly inhabited, or that the highway crossing was much used in the night-time.

The testimony of a witness that he did not hear a locomotive bell ring on approaching a crossing is entitled to no weight as against affirmative evidence that it was rung, where it appears that he was standing, at the time testified to, on the crossing within three or four feet of the track, but his attention was not drawn to the approaching train by its headlight or by its noise.

The following requests to charge were presented by the defendant. the railroad company, and were refused·

If the deceased, "when he stood at a point ten' or fifteen feet distant from the nearest rail, or at any point between that and the rail and before he entered upon the track, could have seen the approaching train, the plaintiff cannot recover; " and,

If the fact was known to the deceased "that the gates were not operated after seven P. M., he was not entitled to rely, in approaching the track for the purpose of crossing or' attempting to cross, upon any protection from the gates."

*Held*, that under the evidence in the case, it was error to refuse to charge as requested.

APPEAL by the defendant, the New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 30th day of November, 1892, upon a verdict rendered at the New York Circuit, and from an order entered on the 6th day of December, 1892, denying the defendant's motion for a new trial, made upon the minutes.

*D. W. Tears*, for the appellant.

*Wales F. Severance*, for the respondent.

FOLLETT, J. :

This action was brought to recover damages sustained by the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant's employees in the management of a train when passing a highway crossing.

In the twenty-third or twenty-fourth ward of the city of New York the defendant's railroad crosses at grade a highway known as the Spuyten Duyvil road, and the crossing is called the Spuyten Duyvil crossing. At this place the railroad consists of two tracks, of the gauge of four feet and seven-tenths of a foot. The two tracks are eight feet and one-tenth of a foot apart, making the distance between the outermost rails of the track seventeen feet and a half. The highway extends along the westerly side of the railroad.

for some considerable distance, then crosses it and extends along the easterly side of the railroad. The next crossing towards New York city is Riverdale avenue crossing, which is 1,470 feet northerly of Spuyten Duyvil crossing. The railroad above and below Spuyten Duyvil crossing is very crooked, so that trains bound for New York run nearly north for some little distance. It is asserted on the part of the plaintiff that her intestate, John H. Rainey, was struck at this crossing between eight and nine o'clock in the evening of January 4, 1892, by a New York bound train. About nine o'clock of that evening he was found lying with his skull fractured about 150 feet north of the Spuyten Duyvil crossing, on the east side of the railroad, near a fence. He was lying on his back, with his head towards the crossing last mentioned, and with his feet towards Kingsbridge. He was unconscious, and died within two days without regaining consciousness. The negligence sought to be established on the trial consisted of two omissions on the part of the defendant: (1) Neglecting to comply with an ordinance of the city of New York requiring the defendant to maintain gates on both sides of its grade crossings, and to attend them at all times when trains were passing, and close them at least one minute before a locomotive passed over the crossing. (2) Neglecting to ring the locomotive bell on approaching the crossing.

It was proved, and was not disputed, that defendant maintained gates at this crossing, which were opened and closed, as required, between the hours of seven o'clock in the morning and seven o'clock in the afternoon, but that they were left open without the presence of gatemen between the hours of seven o'clock in the evening and seven o'clock in the morning.

Proof of the violation of a city ordinance does not establish a cause of action against the violator, but it is evidence bearing upon the question of negligence. (*McGrath* v. *N. Y. C. & H. R. R. R. Co.*, 63 N. Y. 522; *Knupfle* v. *Knickerbocker Ice Co.*, 84 id. 488; *Moore* v. *Gadsden*, 93 id. 12; *Connolly* v. *Knickerbocker Ice Co.*, 114 id. 104; *McRickard* v. *Flint*, 114 id. 222.)

The evidence in the case at bar simply shows a violation of the ordinance of the city, but there is no evidence that the trains were run at an unusual rate of speed, that the vicinity was thickly inhabited, or that the highway crossing was much used during the

night-time.　The fact that two of the trains were one minute late is not important, and the evidence is quite conclusive that there was a clear view of trains approaching from either direction for 600 or 700 feet.　The evidence in the record is not sufficient to sustain a judgment on the first ground of negligence, above stated.

Only one witness, Robert McGregor, testified to seeing the accident.　He and Rainey had been neighbors for several years.　He testified that about four or five o'clock in the afternoon of January twenty-fourth, he went to Rainey's house, stayed awhile, and they then went out to walk and entered McArdle's saloon, which is about 200 yards from the crossing on the west side of the railroad, the decedent's house being on the east side thereof and within 1,000 feet of the crossing.　The witness says he left Rainey at the saloon, but seems quite uncertain as to the time.　He testified that his house was about ten minutes' walk away, and that he reached his home at six o'clock, or eight or nine o'clock.　He says that he removed part of his clothing, and lay on a bed until about eight o'clock, when he went out by appointment to meet Rainey.　He says that the night was dark; that he went down to the crossing on the east side of the railroad, and was about to cross to the west side, when he saw Rainey coming towards him from the west.　That he, the witness, stood about three or four feet from the east rail of the east track, and that Rainey was about thirty feet away on the west side of the track, which places him about ten feet west of the outer rail of the west track.　Trains bound for New York run on the west track.　The witness testified that Rainey, when near the track, stopped and looked both ways, started to cross, and, just as he had passed the east rail of the west track, a New York bound train struck him; " that he was whipped out of my sight."　The witness testified : " I did not hear any bell rung on the engine when it went by, or as it approached the crossing.　My hearing is pretty fair.　There was no warning whatever given of the approach of that train that I heard.　The crossing was not guarded by anybody at the time of the passage of that train.　There was no watchman or gateman there."

This was the only evidence offered to sustain the second alleged ground of negligence above stated.　The witness does not attempt to identify the train which caused the injury.　Defendant's telegraphic operator, who was stationed at that time in the Spuyten

Duyvil tower, testified that the only trains that passed over the road bound for New York, between eight and nine in the evening of January twenty-fourth, were No. 222, which passed at eight twenty-one, one minute late ; No. 6, which passed at eight thirty, one minute late, and No. 30, which passed at eight fifty-eight.

The conductor and fireman of No. 222 testified that this train did not strike anyone, to their knowledge, and the fireman testified that the bell was rung all the way between Spuyten Duyvil station and Kingsbridge station, and while passing the crossing. The conductor, engineer and fireman of No. 6 testified that their train did not strike anyone, to their knowledge, and the engineer and fireman testified that the bell was rung as they approached and passed the crossing. The conductor, engineer and fireman of No. 30 testified that their train did not strike anyone, to their knowledge, on that trip, and the engineer and fireman testified that the bell was rung as they approached and passed the crossing.

The accident happened on the 24th of January, 1892, and the trial was had November twenty-ninth of the same year. Thus stood the evidence bearing upon the second alleged ground of negligence.

"As against positive affirmative evidence of credible witnesses of the ringing of a bell or the sounding of a whistle, there must be something more than the testimony of one or more that they did not hear it. It must appear that their attention was directed to the fact at the time." (*Culhane* v. *N. Y. C. & H. R. R. R. Co.*, 60 N. Y. 135 ; *McKeever* v. *N. Y. C. & H. R. R. R. Co.*, 88 id. 667; *Stitt* v. *Huidekopers*, 17 Wall. 384 ; Whart. Ev. § 415.)

The witness McGregor, who testified that he did not hear the bell ring, stood on the crossing within three or four feet of the track, but his attention was not drawn to the approaching train by its headlight or by its noise. His testimony, under such circumstances, that he did not hear a bell is entitled to no weight. Section 7 of chapter 282, Laws of 1854, which provides that a bell shall be rung or a whistle sounded on locomotives for at least eighty rods before crossing a highway or street, and makes railroad corporations liable for all damages sustained by any person by reason of neglecting this duty, was repealed by chapter 593, Laws of 1886. (*Lewis* v. *N. Y., L. E. & W. R. R. Co.*, 123 N. Y. 496 ; *Kane* v. *N. Y., N. H. & H. R. R. Co.*, 132 id. 160.) The evidence of this witness is, to say the

least, extraordinary. He and Rainey were neighbors and friends and had lived near each other for several years. He testified that he saw the train strike Rainey and carry him away, and without going to look for him he went home, not by the usual route, but by a circuitous one, took off a part of his clothing and went to bed; *that he might have slept*, and while in bed his son informed him that Rainey had met with an accident; that he then went to Rainey's house between ten and eleven o'clock and saw him. We will give the witness' explanation of his most singular conduct in his own language.

" The reason that I done that was that I got frightened. I thought the man was all cut up, I was afraid. Not only that, but I was afraid of meeting anybody by going the regular road. To avoid meeting any person or seeing any one I passed over the track and went home the back way."

This is so contrary to the usual conduct of men that it is incredible. The evidence of the absence of contributory negligence on the part of the decedent is all furnished by this witness. He testified that as he stood on one side of the railroad and Rainey on the other " he (Rainey) looked first towards Spuyten Duyvil, I think he did ; I am not sure I saw him stand and look up and down the track ; I think he looked first towards Spuyten Duyvil and then turned his head towards Forty-second street, or Riverdale crossing. At that time I did not see the train; I am quite sure of it. I neither saw nor heard it at that time."

Upon the important question of the freedom of the plaintiff's intestate from contributory negligence, the senses of the witness were all alert. He brought the case within the decisions, but he was not sufficiently attentive to see the headlight or hear the noise of the approaching train. Could he or Rainey, had they been attentive, have seen or heard the train? The witness testified, that standing where Rainey stood, the approaching train could have been seen in daylight not more than 100 or 150 yards, but if you were standing on the other side (where the witness stood), you couldn't see it fifty yards. At another place in the record the witness testified that he might have heard the train when it was within one or two hundred feet from him. The witness does not claim to have made any test as to the distance a train could be seen from the crossing. A map is in evidence which shows that the track is substantially

straight for some distance on both sides of the crossing. Haviland, an engineer sworn for the defendant, testified that standing on the crossing ten or fifteen feet west of the westerly rail, that a train could be seen 750 feet away, and that standing thirty-four feet west of the rail an approaching train could be seen 597 feet from the crossing. That the nearest building was 350 feet away from the crossing. Curtis, another engineer, testified to the same state of facts. Under the evidence as it appears in the record, the plaintiff failed to sustain the burden which was upon her of showing that her intestate did not contribute to the accident. It may be observed that the decedent was thirty-eight years old, and it was not shown that his eyesight or hearing had been impaired. Upon the evidence as it stood, the court erred in refusing to dismiss the complaint. The court was asked to charge :

" I ask your honor to charge that if John Rainey, when he stood at a point ten or fifteen feet distant from the nearest rail, or at any point between that and the rail, and before he entered upon the track, could have seen the approaching train, the plaintiff cannot recover.

" The Court.— I refuse to charge that, because I think that calls for an expression of opinion on the part of the court as to a fact. I charge the jury that that is a circumstance which they may take into consideration in making up their minds as to whether John Rainey was or was not guilty of contributory negligence.

" Defendant's Counsel.— I except to your honor's refusal to charge as requested, and to the qualification.

" Defendant's Counsel.— I ask your honor to charge that if the fact was known to John Rainey that the gates were not operated after seven p. m., he was not entitled to rely, in approaching the track for the purpose of crossing, or attempting to cross, upon any protection from the gates.

" The Court.— I refuse to charge further upon that subject than I have already charged. Defendant excepts."

Both requests should have been granted. There might be circumstances which would make it proper to refuse the first request, but under the evidence in this case it was not. On the second proposition the court had given no instructions to the jury in its charge. No allusion had been made to the fact that Rainey had lived at Spuyten Duyvil for nine years, and in the Riley house for eight months, and

must or might have known within what hours the gates were operated.

The judgment and order should be reversed on the exceptions and on the facts, and a new trial granted, with costs to the appellants to abide the event.

Van Brunt, P. J.:

I concur. There is no question but that McGregor did not see the accident, and there is, therefore, no proof in the case that the deceased was free from contributory negligence.

O'Brien, J.:

I concur in result upon the ground of the refusals to charge pointed out in the opinion. Upon the case I think the question of plaintiff's right to recover was properly submitted upon conflicting evidence to the jury, and were it not for the other errors pointed out I would favor an affirmance of the judgment.

Judgment and order reversed on the exceptions and on the facts, and a new trial granted, with costs to the appellants to abide the event.