JOSEPH FOWLER, Appellant, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

*Contributory negligence — duty of a person approaching a point of danger — when a jury should not find that signals were not given.*

To maintain an action to recover damages for injuries sustained by reason of the alleged negligence of a railroad corporation, it is necessary for the plaintiff to establish the absence of contributory negligence on his part. The burden of proof is upon him, and he is not entitled to the benefit of any presumption to establish the absence of such negligence on his part, and where the circumstances point as much to such negligence as to its absence, he is not entitled to recover.

When a person approaches a point of danger, it is his duty to do so with care and caution commensurate with the dangers of the locality. The duty of looking and listening when one approaches a crossing of many railroad tracks is not adequately discharged by merely looking as the dangerous point is approached, and then, when it is absolutely reached, going blindly forward.

Where the witnesses for the plaintiff testified that they did not hear the bell of a certain locomotive rung or its whistle blown, but it did not appear that anything specially called their attention to the absence of such signals, and the defendant's witnesses swore positively that the bell was rung and the whistle blown, a jury should not find that the bell was not rung nor the whistle blown.

APPEAL by the plaintiff, Joseph Fowler, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Schenectady on the 29th day of November, 1892, upon the verdict of a jury directed by the court after a trial at the Schenectady Circuit, and also from an order entered

in said clerk's office on the 29th day of November, 1892, granting the defendant's motion for a nonsuit.

*J. Newton Fiero,* for the appellant.

*Hamilton Harris,* for the respondent.

HERRICK, J.:

State street in the city of Schenectady is intersected at right angles by the railway tracks of the defendant; at the point of intersection State street runs substantially east and west, and the defendant's tracks north and south. There are four tracks, numbered from the west toward the east, Nos. 1, 2, 3 and 4. At the southwesterly corner of the railroad crossing and State street and between track No. 1 and a building standing on the corner of State street, and known in this case as the "express office," there is a short spur track running beside the building south from State street. On the night of the accident hereafter referred to there was a car standing on this spur track.

The defendant was accustomed to keep a flagman at this State street crossing. On the evening of November 1, 1891, and about eleven o'clock in the evening, the plaintiff, who is a man about sixty years of age, and somewhat deaf in one ear, was on the south side of State street, going east toward the railroad crossing; when he had arrived at the express office he testifies that he looked both ways, northerly toward the depot, which is on the north side of State street, and southerly in the direction of Albany. It was a dark night and somewhat rainy. He states that he neither saw nor heard any approaching train, and that he did not see any flagman there, nor any man with a lantern; that he saw no light except one, and that was a low switch light back of a shanty on the railroad tracks, below State street, in the direction of Albany. That he proceeded on across the tracks, crossing track No. 1, and was just on or across track No. 2 when he was struck by the bumper of the engine attached to the train coming from Albany on track No. 2; that he was thrown to the ground, injured and bruised and rendered unconscious, and sustained injuries from which he claims to be still suffering. He was picked up out of the street, taken to a dispensary, where he lay unconscious until the next day. He testifies that he neither saw nor

heard the approach of the train which struck him; that he did not see any light from any headlight upon the engine. The plaintiff is familiar with this crossing, and has used it for twenty-nine years, sometimes crossing it three or four times a day, frequently crossing in the night-time as well as in the day-time. Several witnesses upon the part of the plaintiff were sworn, and testified that they did not hear any bell rung or whistle sounded, but did not testify that there was anything that called their attention to the absence of any such signals.

The engineer, fireman, trainman and conductor of the train, and the gateman who tended the gate opening into the depot on the north side of State street, at the crossing, all testify positively to the ringing of the bell and the blowing of the whistle. That there was a headlight upon the locomotive is not controverted. Several witnesses, sworn on the part of the plaintiff, testify that, in their judgment, the train was going at the rate of thirty-five miles an hour, and that they did not think the train stopped at the depot. The trainmen and a telegraph operator located in the depot or station, at a distance of 400 or 500 feet from the State street crossing, all testified that the train was going at a speed of eight or ten miles an hour, and that it stopped in the depot from four to five minutes.

The plaintiff introduced in evidence an ordinance of the city of Schenectady prohibiting the passage of trains through the city at a greater rate of speed than ten miles an hour.

At a distance of about 200 feet south of the State street crossing the tracks of the defendant curve to the west, and the uncontradicted evidence is that at the point at the end of the car on the spur track, and twenty-five feet from the westerly rail of track No. 2, and looking south where the vision would be shortened up by such car, the track can be seen for a distance of 174 feet to the south; that beyond the spur track and by the west rail of track No. 1, and twelve feet nine inches from the west rail of track No. 2, the track of the defendant can be seen for a distance of 475 feet, and when the space between tracks Nos. 1 and 2 is reached the tracks can be seen for a distance of 500 feet. There is no evidence in the case to show that the plaintiff looked or listened for approaching trains after he passed the express building, or the car standing on the track next to the express building.

At the close of all the evidence in the case, the court directed the

jury to find a verdict for the defendant upon the ground that the plaintiff did not show. the absence of contributory negligence upon his part. From the judgment entered upon such verdict the plaintiff appeals to this court.

The only question necessary to be discussed is that of contributory negligence. To maintain his action it is necessary for the plaintiff to establish the lack of contributory negligence on his part; the burden of proof is upon him, and he is not entitled to the benefit of any presumption to establish lack of negligence on his part, and where the circumstances point as much to negligence as to its absence he is not entitled to recover. (*Wiwirowski* v. *L. S. & M. S. R. R. Co.*, 124 N. Y. 420; *McDonald* v. *L. I. R. R. Co.*, 116 id. 546–550.) See, also, *Tucker* v. *N. Y. C. & H. R. R. R. Co.* (124 id. 308), a case, in some of its phases, similar to the one now under consideration.

When a person approaches a point of danger it is his duty to do so with a care and caution commensurate with the dangers of the locality. The duty of looking and listening when one approaches a crossing of many tracks does not seem to me to be adequately discharged by merely looking as the dangerous point is approached, and then when it is absolutely reached going blindly forward. Here were four tracks to be crossed, and the only evidence offered the court on the part of the plaintiff is that when the express building was reached, and when yet some feet distant from the first track, he looked both ways.

It is claimed that the car upon the spur track obstructed his vision to the south, and yet when he got beyond this obstruction to his vision there is no evidence that he made any additional attempt to gain a view of the tracks, but went blindly forward to and upon the spot and place where danger was to be apprehended, without either looking or listening.

He was familiar with the crossing, knew that he had a number of tracks to cross, and it seems to me that under such circumstances, to put the evidence in the most favorable aspect for the plaintiff, it points as much to contributory negligence as it does to its absence. It is argued upon the part of the plaintiff that he had a right to rely upon the defendant's obedience to the ordinance prohibiting a greater rate of speed than ten miles an hour, and that had it been.

going at that rate of speed, and if he had seen the headlight of the locomotive when it was 174 feet away, he could have traversed the tracks with safety before the train could reach him, whereas, if it was going at the rate of thirty-five miles an hour, or more, as possibly the jury might have a right to infer from the evidence, that then it would reach him before he had time to cross; and this is attempted to be demonstrated by showing the number of seconds that it would take the plaintiff to cross the track, and the number of seconds it would take to reach the point where the plaintiff was struck by the train going at ten miles an hour, and again when it was going at thirty-five miles an hour. It seems to me going rather far for the court to assume that a person under such circumstances would enter into any such mathematical calculations, and it would be going still further to attempt to uphold a person in going into a place of danger where the variation of a few seconds of time would mean to him death or serious injury. If he makes such a venture he should take the risk and abide by it. This is not a case where one is brought face to face with imminent danger, and where he is called upon to act at once in order to escape it, where his acts in endeavoring to escape ought not to be too closely scrutinized as to whether under such stress of circumstances he acted wisely and prudently. Here the plaintiff claims never to have known of his danger until after the danger occurred. It is somewhat difficult to conceive that he should have reached the point where he was struck without either hearing or seeing the approaching train, knowing only of its presence when he was actually struck by it.

The jury could not have found that no bell was rung or whistle blown, for while plaintiff's witnesses swear they did not hear either, yet it does not appear that their attention was specially directed to either; the defendant's witnesses swear positively that the bell was rung and the whistle blown, and the jury under such a condition of the testimony could not have found to the contrary. (*Rainey* v. *N. Y. C. & H. R. R. R. Co.*, 68 Hun, 495–499.)

The judgment should be affirmed, with costs.

Mayham, P. J., and Putnam, J., concurred.

Judgment affirmed, with costs.