JOHN ZWACK, an Infant, by MATHIAS MEYER, as Guardian ad Litem, and as a Poor Person, Respondent, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Appellant.

*Negligence — boy struck at a railroad crossing — speed greater than permitted by a city ordinance — contributory negligence — public street, used as such, presumed to be legally laid out.*

In an action brought to recover damages resulting from injuries caused by the alleged negligence of the defendant, it appeared that Hydraulic street, running north and south in the city of Buffalo, was crossed at grade by the defendant's double-track railroad which, in addition to its main tracks, had on the south of them three side tracks which crossed Hydraulic street, and still south of these, three side tracks, used for the storage of cars, which did not cross that street. Some cars were standing on the most southerly of these latter tracks, and there were also cars upon the next side track on the north. The plaintiff was walking northerly on the west side of Hydraulic street. As he approached the crossing two locomotives were going east on the south main track. He waited for them to pass, then looked both ways and, seeing no trains, started forward and was struck on the north main track by a train going west at a speed of twenty miles an hour, in violation of a city ordinance which fixed the speed "across any public street at grade," in the city, at six miles an hour.

*Held*, that the question of contributory negligence was properly submitted to the jury (ADAMS, J., dissenting);

That it was negligent in the defendant to run its trains past the crossing, which was unguarded, at the rate of twenty miles an hour;

That as it appeared that the place in question had been used as a public street for at least five years, if the defendant wished to raise the question whether the city ordinance was applicable, it should have given evidence to rebut the presumption arising from such use;

That it was not necessary for the plaintiff to show that the street in question had been legally laid out.

APPEAL by the defendant, The New York, Lake Erie and Western Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 18th day of November, 1895, upon the verdict of a jury rendered after a trial at the Erie Circuit, and also from an order entered in said clerk's office on the 26th day of November, 1895, denying the defendant's motion for a new trial made upon the minutes.

*Adelbert Moot* and *Charles V. Nellany*, for the appellant.

*George B. Burd* and *H. H. Bacon*, for the respondent.

FOLLETT, J.:

This action was begun November 19, 1894, to recover damages for a personal injury, caused, it is alleged, by the negligence of the defendant. There is no exception to a ruling on the admission or exclusion of evidence in the record, and but one exception to the charge is argued. The questions presented arise on the exception taken to the denial of defendant's motion for a nonsuit. The motion was based on the grounds that the evidence failed to show that the defendant was negligent, or that the plaintiff was free from negligence contributing to the injury. The only exception to the charge discussed by the appellant is the exception to the refusal to charge that the evidence would not justify a finding that the train was running at a negligent rate of speed. The accident occurred at about noon on the 24th day of October, 1894, on Hydraulic street in the city of Buffalo, which is crossed at grade by the defendant's double-track railroad. Hydraulic street extends northerly and southerly through the city, and defendant's railroad crosses it at right angles. Besides the two main tracks crossing this street

there are three side tracks on the south side of the main tracks and two side tracks on the north side of the main tracks. In addition to these tracks crossing the street, there are three other side tracks south of the main tracks and east of Hydraulic street which do not cross it. The undisputed evidence is that these side tracks east of Hydraulic street are used for the storage of disabled and other cars; and the plaintiff testified that, on the occasion in question, there were some cars standing on the most southerly of the three side tracks which cross the street, and that on the next side track north there were standing "a whole lot," or "string of cars." Another wit-ness testified that, on the occasion in question, two of these side tracks were full of cars, the first one being about thirty-five feet east of the middle of Hydraulic street. This evidence was not disputed by the defendant, which gave no evidence tending to show that the side tracks east of Hydraulic street were free from standing cars so that foot passengers could see trains approaching from the east. The plaintiff testified, and his testimony was not contradicted, that the cars standing on the side track east of Hydraulic street pre-vented him from seeing the train which came from the east and ran him down. As before stated, this is a grade crossing. At the time of the accident it was not guarded by a flagman, by gates, or in any other manner. The plaintiff was a boy ten years and six months old and was on his way to school walking northerly on the west side of Hydraulic street. As he approached the crossing he saw two locomotives fastened together west of the street and going east on the first or south main track. He stopped and waited for them to pass and then looked both ways for the approach of trains, and seeing none started to go forward, and, as he reached the north main track, he was run down by a pas-senger train running west. One of the witnesses, who had the best opportunity for seeing the accident, testified that he was struck by the pilot. Another witness, called by the defendant, testified that he thought the boy was struck by the steps of the first baggage car. This witness was riding on the rear steps of the second baggage car and was not in so good a position to see the accident as the first wit-ness. Whether the bell on this locomotive was rung was not clearly established. The plaintiff and two or three witnesses did not hear it; one witness said he heard it ring and one said there was so much

noise made by the two locomotives running west that he could not tell whether the bell on the locomotive drawing this train was rung. The principal act of negligence on the part of the defendant, relied on for a recovery, was the speed at which this passenger train crossed this street. A witness familiar with railroads, sworn for the plaintiff, testified that the train crossed Hydraulic street at the rate of " about twenty miles an hour." A switchman in the employ of the West Shore railroad, sworn for the defendant, testified that the train crossed Hydraulic street at the rate of " about twenty miles an hour." A passenger on the train, sworn for the defendant, testified that the train was not running " over six miles an hour " when it crossed Hydraulic street. The speed of the train was the important issue in the case, and it is a significant fact that none of the employees on it were called by the defendant to testify to the rate of speed at which it crossed this street on this occasion. The evidence is ample to justify the jury in finding that this train crossed this street at the rate of about twenty miles an hour, and that the side tracks on the south side of the main tracks were so filled with standing cars that they obstructed the plaintiff's view of this train coming from the east.

The following city ordinance was read in evidence : " It shall not be lawful for any steam railroad to propel any engine or cars across any public street at grade in the city of Buffalo at a greater rate of speed than six miles per hour, under a penalty of fifty dollars for each offence."

The evidence in this case was amply sufficient to justify the conclusion that the defendant was guilty of negligence in the management of its business at this place and on this occasion, and that its neglect caused the accident. Whether the plaintiff was guilty of contributory negligence was, under the evidence, a question of fact for the jury. He looked both ways, as he testified, for the approach of trains. One witness, however, testified that he did not see the plaintiff look in either direction for trains; but looking to the east would, under the circumstances, have availed him little, for the view was obstructed by the cars upon the sidings. It is urged by the learned counsel for the defendant that it is not neglect for a railroad train to cross a street at a high rate of speed, and he cites in support of his contention cases arising out of accidents at the crossings of

country highways.   These cases have no application to the rate of speed at which it is proper to run trains over grade crossings in a populous city.   The circumstances are entirely dissimilar.   It has never been held, and I think it will never be held, that it is not evidence of negligence for a railroad to run its trains at the rate of twenty miles an hour over unguarded grade crossings in a city having a population of more than 250,000.   It is urged that the plaintiff failed to show that this street was legally laid out by the authorities of the city.   It was shown, by uncontradicted evidence, that it had been used as a public street for five years for the passage of teams and footmen, which was sufficient to raise a presumption that it was one of the public streets of the city.   This being the state of the evidence, if the defendant had wished to raise the question that the ordinance of the city was not applicable to this case, it was its duty to give evidence to rebut the presumption arising from the evidence given by the plaintiff.   It is not necessary, in crossing cases, for plaintiffs to show that a country highway or a street in a city or village was legally laid out pursuant to the statutes in such case made and provided.

We find no error in this case, and the judgment and order should be affirmed, with costs.

All concurred, except ADAMS, J., dissenting.

HARDIN, P. J. (concurring):

Plaintiff, as a witness, detailed the circumstances attending the accident.   In stating the manner in which he approached the track where the injuries occurred, he said: " I didn't do anything else when I got there first, except wait for them engines.   I looked both ways, east and west.   I did not see any other trains coming from the west except these two engines.   I did not see anything from the east.   There were cars standing on the tracks where you switch to prevent my seeing the railroad toward the east; those tracks are off from the main tracks; they are at the south side of the main track; there were three switch tracks, right in the middle of the planks there."   In the course of his cross-examination the witness said: " I don't know how long it was from the time I came up and stood still, seeing those engines go along and the time I got to the second main track; I can't give you any idea about that. *I did not see*

*any other trains; and other engines.* I didn't do anything else while I was standing there, except to watch those two engines."

Upon the request of the appellant the jury received special instruction upon the question as to the plaintiff's alleged contributory negligence. Defendant's counsel asked the court to charge the jury : " That if the evidence points to any negligence of the boy as contributing in any way to the accident, then, that he cannot recover." In response to that the court observed : " If the evidence shows any negligence, yes, certainly, he cannot recover." Thus, it appears, the jury were explicitly instructed that plaintiff must be free from contributory negligence in order to recover. The jury have found upon that question upon evidence sufficient to uphold their verdict in favor of the plaintiff. While there may be some doubt about it ; while, possibly, we might, if on the jury, have found otherwise, it is in accordance with well-established rules to accept the verdict of the jury. (*Mills* v. *The N. Y. C. & H. R. R. R. Co.*, 5 App. Div. 11.)

In *Pressman* v. *Mooney* (5 App. Div. 121) it was said (p. 123) : " There was evidence tending to show that due diligence had been used by the older sister, who was in charge of the younger, and that the accident occurred through the reckless driving of the employee of the defendant. It is true that the evidence upon the part of the defendant gives an entirely different version of the happening of the accident ; but that was a question for the jury, and they having solved it in favor of the plaintiff ; we cannot interfere." (*Parsons* v. *N. Y. C. & H. R. R. R. Co.*, 113 N. Y. 355 ; *Murphy* v. *R., W. & O. R. R. Co.*, 32 N. Y. St. Repr. 381.)

The foregoing views, as well as those expressed in the opinion of FOLLETT, J., lead me to concur in the result reached by him, and to vote for an affirmance of the order and judgment.

ADAMS, J. (dissenting) :

This action was brought by Mathias Meyer, as guardian *ad litem,* to recover damages for personal injuries alleged to have been sustained by John Zwack, an infant, by reason of his coming into collision with a train upon the defendant's railroad, at a point where such road crosses a public highway in the city of Buffalo, known as Hydraulic street.

The undisputed evidence in the case shows that at this crossing

there are two main tracks running east and west; that north of the main tracks there are four side tracks, and that south of the main tracks there are five or six side tracks, but two of which actually cross Hydraulic street.

The accident occurred at about noon on the 24th day of October, 1894, at which time Zwack had started from his home to go to school.

He testified that, as he walked along towards the railroad, he was eating some bread and sausage which he carried in his hand.

He approached the railroad crossing upon a plank walk which extended through Hydraulic street and over the defendant's tracks, until he came to the first side track or switch which crossed Hydraulic street.

He further testified that when he reached that point he looked both ways and saw two engines going east upon main track No. 1; that he stopped until they had passed east of the crossing and then started ahead, and when he reached the second main track he was struck. And the evidence is that the engine which struck him was attached to a passenger train going west upon main track No. 2, which was moving at the rate of from twenty to twenty-five miles an hour.

The plaintiff's principal witness, and the only one who was in a position to see the entire occurrence, was Daniel Zink, who was riding upon one of the two engines, which it appears were attached together as they passed over this highway, and he testifies that he observed the boy standing in the center of the side track south of the main tracks as the engine passed by; that as soon as they had passed over the highway he started upon a run, or as he expressed it, "the boy made a rush across and was struck by the Erie passenger train;" and he further testifies that "from the time he started to go cross these tracks he didn't stop and turn his head or look either way at all, but he looked right straight ahead; that is the way he got run into." No other witness, save the boy himself, attempts to testify to what took place immediately preceding the accident, and the case is utterly destitute of any evidence which tends to show that, after starting from the point where he first stopped, the boy did look in either direction. There is some evidence that there were some freight cars standing upon one or

more of these side tracks, but upon which one does not appear, and the evidence upon this subject is not at all clear. However, in the view which I take of the case, it is difficult to see how the presence of these cars upon either of the side tracks is a matter of very much consequence; for one has but to look at the map to see that, after the plaintiff had passed over the north side track, there was a distance of at least twenty feet between the north rail of that track and the south rail of the second main track, and that, while passing over this distance, the cars standing upon any one of the side tracks could not, by any possibility, have obstructed the view of the train approaching from the east; and the witness Zink swears that as he was riding upon one of these engines the boy was in plain sight all the time until he was struck.

We, therefore, have this state of facts upon which the plaintiff seeks to recover damages against the defendant:

A boy between ten and eleven years of age, attempting to cross a railroad track with which he was perfectly familiar, and over which he was accustomed to travel every day, stops at a point twenty to twenty-five feet from the main track, in order to allow two engines from the west to pass by; and, as soon as they had crossed the highway, without taking the trouble to look in either direction to observe whether any other train was approaching, starts upon a run in a heedless, boy-like way, rushing headlong into a train approaching from the east, which he might easily have seen and avoided had he looked at any time after passing over the last side track, inasmuch as, while he was running a distance of at least twenty feet, the train was unquestionably in plain sight, with no intervening object to obscure the same, save these two engines, which could not possibly have prevented his seeing some portion of the approaching train, had he looked to the east.

Certainly such recklessness as was displayed by this boy would have been sufficient to prevent a recovery upon the part of an adult; and, inasmuch as the case was tried and submitted to the jury upon the theory that the boy was *sui juris,* I can see no reason why he should not be held to the same degree of accountability as he would had he been twenty, instead of ten, years of age. (*Fowler* v. *N. Y. C. & H. R. R. R. Co.,* 74 Hun, 141; *Tucker* v. *N. Y. C. & H. R. R. R. Co.,* 124 N. Y. 308.)

I am of the opinion, therefore, that error was committed by the trial court in submitting the question of contributory negligence to the jury, and that, in consequence of such error, a new trial should be directed; and for this reason I am unable to concur in the views. expressed in the prevailing opinion.

Judgment and order affirmed, with costs.