ALLAN FRASER, Claimant, *v.* STATE OF NEW YORK.
Claim No. 15,818.

EDITH S. ANTRAM, Claimant, *v.* STATE OF NEW YORK.
Claim No. 15,819.

BERTHA G. ANTRAM, Claimant, *v.* STATE OF NEW YORK.
Claim No. 15,820.

MARY R. CASS, Claimant, *v.* STATE OF NEW YORK.
Claim No. 15,821.

HARRY A. ANTRAM, Claimant, *v.* STATE OF NEW YORK.
Claim No. 15,822.

LATHROP P. SMITH, Claimant, *v.* STATE OF NEW YORK.
Claim No. 15,823.

(Court of Claims, State of New York, May, 1920.)

Claims — against state of New York — when dismissed — negligence — damages — evidence.

On the morning of May 30, 1917, claimants left Buffalo in an automobile for a day's outing. Arriving at Rochester late in the afternoon they proceeded to Irondequoit Bay where they

had dinner, and returned to Rochester, and proceeding westerly along Main street to Plymouth avenue drove to the left about three hundred feet and into the Erie canal at about nine P. M., at which time the canal bridge, which is at right angles with said avenue, was hoisted to permit the passage of a number of boats, one of which became grounded and considerable delay was occasioned in floating it. It being a holiday, the travel and traffic upon the street was unusually large and because of the delay of raising the bridge, a great number of people had gathered on each side of the canal. There was a garage on each side of the avenue immediately adjoining the canal, the lights in each garage were lit, and the usual street lights were brightly burning. The driver of the automobile drove along the avenue at an ordinary rate of speed until he arrived at the canal, and without stopping continued very slowly on his way until the entire party was precipitated into the water. On the hearing of the claim for damages on the ground that the state was negligent in failing to properly guard and protect the opening to the approach of the canal while the bridge was hoisted, there was no evidence to show either what is usually done in similar situations or how streets having hoist bridges are guarded. *Held,* that it was not for the court to say what kind of precautions, guard or method the state should adopt, but to determine whether it had adopted the ordinary precautions usually taken.

The testimony on the part of claimants was that there was no watchman at the place of the accident, while the testimony on the part of the state was that there was. *Held,* that applying the rule that negative testimony as against positive testimony does not suffice to carry the case to the jury it must be held that claimants had not sustained the burden of establishing their claim by a preponderance of evidence and that it will be dismissed on that ground.

CLAIMS for damages for negligence.

William J. Bullion, for claimants.

John H. Clogston, Deputy Attorney-General, for State of New York.

MORSCHAUSER, J. The above claimants filed a claim for damages alleged to have been sustained by them

on the 30th day of May, 1917.  The claimants Mary
R. Cass and Allan Fraser occupied the front seat of an
automobile, and the other claimants were occupying
the back part of the same automobile, and had left
Buffalo in the morning for the purpose of taking a trip
to Rochester, N. Y., and having a day's outing.  They
arrived in Rochester late in the afternoon, and from
there proceeded to Irondequoit bay, where the party
had dinner.  After dinner the party proceeded back to
Rochester and westerly along Main street to Plymouth
avenue, where they turned to the left and proceeded
something like 300 feet, at which point they drove into
the Erie canal.  This was about nine o'clock in the
evening.  At that time, the bridge over the canal, which
is at right angles to Plymouth avenue, was hoisted so
as to permit a number of boats to pass.  One of the
boats became grounded, and there was considerable
delay in getting the boat started.  The day being a
holiday, there was an unusually large amount of travel
and traffic upon the street, and as the traffic was con-
siderably delayed because of the raising of the bridge,
quite a large number of people had gathered in the
highway on each side of the canal.

There was a garage on each side of Plymouth
avenue immediately adjoining the canal.  The lights
were lit in each of these garages, and the usual street
lights, so far as the evidence shows, were lit and
burning brightly.

The driver of the automobile in which the claimants
were riding, proceeded along Plymouth avenue at the
ordinary rate of speed until he arrived at the canal,
and without stopping, he continued very slowly on his
way, and the entire party were precipitated into the
canal; and, fortunately, none of the parties were
drowned.

The claimants filed a claim against the state, alleg-

ing that the state was negligent in failing to properly guard and protect the opening to the approach of the canal while the bridge was hoisted.

The attorney for the state in his brief says: " that the claimants were out for a day's pleasure. Perhaps they dined too well at the road house." But there is absolutely nothing in the evidence that justifies the inference asserted by the attorney for the state, and there is not any evidence that would justify a suspicion that claimants had in any way dined too well or drank to excess. In fact, the claimants impressed us as being of very high type of citizens, and eminently respectable, and we were very much impressed with their testimony, and the manner in which they gave it impressed the court that they were absolutely truthful.

The state denies the negligence and claims that the claimants were guilty of contributory negligence. While the driver of the car, Allan Fraser, might have been guilty of contributory negligence, such negligence can in no way be imputed to the other claimants who were passengers in the car. *Ward* v. *Clark,* 189 App. Div. 334; *Terwilliger* v. *Long Island R. Co.,* 152 id. 168; *Strauss* v. *Newburgh E. R. Co.,* 6 id. 264. But before the question as to whether any of the parties who make a claim was guilty of contributory negligence or not is to be considered, the claimants must establish negligence on the part of the state. Primarily, the state is not liable for negligence; and this has been recently decided in the case of *Smith* v. *State of New York,* 227 N. Y. 405, and many cases cited therein. And it can only be made liable when the state waives its immunity. In this case the state has assumed liability and waived its immunity, but with the proviso, however, in the legislative enactment assuming such liability that the state would only be

liable under the same circumstances and state of facts that individuals would be liable in an action for negligence and to that extent only.

The claim on the part of the claimants is that the state, when it hoisted the bridge, should have had some barrier to protect people from driving into the canal, such as a chain or a gate, and should also have had a watchman or flagman there to warn people approaching the canal.

The claimants attempted to prove upon the trial that there was no watchman there to warn the people who might be approaching. While it is always a question for the court to say whether there is any evidence tending to show negligence on the part of a defendant with respect to his method of work, or in the method adopted by those for whose negligence such defendant was responsible, and it is for the jury to say whether the evidence submitted is sufficient to show negligence, yet we do not understand the rule to be that it is for a court to determine what precaution a defendant under the circumstances was bound to observe. There is no evidence in the case showing what is usually done in similar situations, and there is no evidence to show how streets having hoisting bridges are guarded. And, therefore, it is not the province or the duty of the court to say what kind of precaution, or guard, or method the state should adopt, but simply to determine whether the state adopted the ordinary precautions that are usually used or not. If not, then the state is guilty of negligence. But if the state adopted the usual methods, then the state is not guilty of negligence.

The claimants, who were the occupants of the car, all testified on the trial that they did not see any watchman or any person with a red light, but that they did hear a bell, and supposed it was a fire engine;

and that they saw the bridge in the air, but supposed it was an overhead railroad. So that the testimony of all of the claimants, as to whether there was a watchman there or not, was at best negative.

The claimants also produced one Thomas H. Butler, a disinterested witness, who testified at first that he was at the scene of the accident a few minutes before its happening, and that there was no watchman there; and when he was asked whether he saw one there, answered, " I looked for one and didn't see one." He also says that after the accident he looked for the watchman, and didn't see any. He also testified on cross-examination: " Q. You wouldn't swear there was not one? A. No, I would not." And in his testimony he also stated that he didn't hear any bell, and that at the location where the car went into the canal there was a towpath; that after dropping from the roadway the car fell onto the towpath, and then continued on into the canal. All the other witnesses, of both the state and the claimants, state that there was no towpath at the place where the car went into the canal; and also, all the witnesses clearly state that at the time the car went into the canal, the bell, which is a signal upon the bridge, was ringing. So that it is evident that while we believe the witness Thomas H. Butler intended to be absolutely correct and honest — and he so impressed the court — his observation of some of the facts and conditions at that time was not correct; and his evidence as to the fact of whether there was any watchman there or not at the time is negative. Not any of claimants' witnesses testified that at the time of the accident they were giving any special attention by observation as to whether there was a flagman there, or a signal given with a red lantern at the time. While the witness Butler, for the claimants, testified that he looked and didn't see any watchman, on cross-

examination he testified that he would not testify
there was not such a watchman there, so that all the
testimony on the part of the claimants is at least
negative.

As against the testimony of the claimants, and this
witness Butler, the state produced one Richard
McDonald, who testified that he was not an employee
of the state, had no interest in the claim, and that at
the time of the accident he saw one Stillson F. Curtis,
who was the watchman there, in the middle of the
road right at the edge of the canal, on the side of the
canal that the claimants were approaching, and that
he saw him have a red lantern and swing the same.
Henry G. Cook, an employee of the state, testified that
he was at the place of the accident, and that the watch-
man Curtis was there swinging his red lantern. Still-
son F. Curtis, who was the watchman, also testified
that he was there at the time, swinging his lantern, and
that he continued to swing the same until he was com-
pelled by reason of the approach of the automobile in
which the claimants were riding to step to one side to
avoid being struck. One Thomas Mellor, a police
officer, testified that he arrived there shortly after the
accident and found Curtis, the watchman, on duty. And
all of these witnesses testified positively to the red
lights being on each side of the uprights of the bridge,
and that the bell was ringing, and that the light in
front of the garage was brightly lit, and that there
were a large number of people on each side of the
canal waiting for the bridge to come down so that they
could cross. All of the claimants testified positively,
and Butler, the disinterested witness, also testified
positively, that they did not see any person with a red
lantern, or see any watchman. And while Butler tes-
tified on direct examination that he made an observa-
tion as to whether there was a watchman there at all

or not, yet on cross-examination he simply says he did not notice any.

The fact that the bridge had been up an unusual length of time, and it being a holiday, probably increased to a considerable extent the traffic, and caused a large number of people to accumulate at the edge of the canal waiting for the bridge to be lowered. And while the witnesses for claimants say they did not see a watchman, the fact that they did not observe such a watchman can be easily explained by the large number of people standing on the sidewalk and in the roadway, which undoubtedly prevented the occupants of the car from seeing the watchman. There is no doubt but that Curtis, when he saw the car approaching, did run out but necessarily stepped to one side to avoid being run into, and that this occurred while the automobile was so near the edge of the canal that the driver was unable to check its speed and prevent it from going into the canal.

The fact that the car did not go any distance into the canal, but was close to the bank, indicated clearly to the court that the driver of the car had slackened the speed of the car considerably and had taken alarm at some signal or something to call his attention to the fact that there was danger. Had the car been going at the usual moderate rate of speed, it would have dropped into the canal somewhat farther away from the bank than is shown by the evidence in the photographs; and the evidence of all the witnesses was that when they saw the car going into the canal it was going so slow that the front wheels just dropped, and they thought the car would stop before it got into the canal.

After seeing the claimants and their witnesses, we have no doubt but that they intended to be absolutely truthful; and the manner of their giving the testimony,

and the moderate amount that they claimed for loss as to their personal property, and also for damages, indicated to us that the claimants intended to be absolutely honest and fair. But as the claimants hold the burden of proof, and must establish their case by a preponderance of evidence, we must be governed by the rule applicable to positive and negative testimony. The testimony on the part of the claimants was negative that there was no watchman there, while the testimony on the part of the state is positive that there was a watchman there; that the bell was ringing, and that the red lights on each side of the uprights of the bridge were burning brightly, in addition to the fact that there was a great crowd gathered there at the time, and the lights from the garage were shining brightly; and as to the question of the bell being rung, the claimants all admitted that they heard it at the time.

Applying the rule that negative testimony as against positive testimony given on the trial does not suffice to carry the case to the jury, we must hold that the claimants have not maintained the burden of establishing their case by the preponderance of evidence. *Matutinovich* v. *New York Central R. R. Co.,* 182 App. Div. 451, and cases cited therein; *Culhane* v. *N. Y. C. & H. R. R. R. Co.,* 60 N. Y. 133; *McKeever* v. *N. Y. C. & H. R. R. R. Co.,* 88 id. 667; *Foley* v. *N. Y. C. & H. R. R. R. Co.,* 197 id. 430; *Fowler* v. *N. Y. C. & H. R. R. R. Co.,* 74 Hun, 141; affd., 147 N. Y. 717; *Rainey* v. *N. Y. C. & H. R. R. R. Co.,* 68 Hun, 495; *Becker* v. *Fargo,* 158 App. Div. 810; *Young* v. *Erie R. R. Co.,* Id. 14, 21; *Glennon* v. *Erie R. R. Co.,* 86 id. 397; affd., 180 N. Y. 562; *Durkee* v. *Delaware & Hudson Canal Co.,* 88 Hun, 471; *Griffith* v. *Long Island R. R. Co.,* 147 App. Div. 693.

The claimants assert that two witnesses who give positive testimony are employees, and, therefore, that

their testimony should be disregarded. But it has been held that where negative testimony is given on the part of a claimant, and positive evidence against the negative testimony is given by employees of a defendant, the claimant has not, in cases of this kind, sustained the burden which is cast upon him to establish his case by the greater weight of evidence, and by a preponderance of evidence. *Miller* v. *Brooklyn Heights R. R. Co.,* 158 App. Div. 808.

The claimants' counsel also urges very forcibly and ably upon us the proposition that the authorities cited had to do with the hearing of signals, and that there is a distinction as to a person seeing an object or hearing a noise. We do not believe that there is any difference in the rule. Negative testimony as to the sense of seeing is no different than negative testimony as to the sense of hearing; and the fact that the claimants were in the car approaching the canal, and did not see any watchman, does not make the testimony any the less negative than witnesses testifying they did not hear a signal given.

Therefore, while we believe that the claimants in their testimony were truthful, an award for the damages sustained by them cannot be made, for the reason that they have not established their claim by the greater weight of evidence; and that the positive evidence of the disinterested witness, and also the employees of the state, has not been overcome by the negative testimony given by the claimants.

The claims should, therefore, be dismissed.

ACKERSON, P. J., concurs.

Claims dismissed.