JOHN SKAARUP, AS ADMINISTRATOR, ETC., APPELLANT, *v.* CHARLES STOVER, RESPONDENT.

*Negligence — when a question for the jury — what disregard of the master's order does not constitute contributory negligence.*

In an action to recover damages resulting from the death of a servant, it appeared that the master set two boys, one of fifteen and the other of fourteen years of age, at work sawing logs near a declivity of about thirty-three feet in the hundred; the log to be sawed was steadied upon a stump by a stick. After working for some time the younger boy, who had been placed by the master on the upper side of the stump, changed places with his companion; soon after which, the log having been sawed through, both parts fell on the lower side of the stump and began rolling down the declivity. The younger boy attempted to escape, but his foot was caught under the rolling log, weighing about 3,500 pounds, which rolled over upon and killed him.

It was claimed that the deceased, in going from one side of the log to the other, had disobeyed the command of the master.

*Held*, that if one side of the log was more dangerous than the other the boy should have been informed of it by the master.

That there was a question for the jury whether the master had, in this respect, discharged his duty to the deceased, as the mere direction to work on the upper side of the stump and stay there gave no warning of any danger existing on the lower side.

That disobedience on the part of the servant to the master's command is not necessarily contributory negligence, which implies a disregard of proper care of one's safety.

It is contributory negligence, and not a contributory act, which defeats a recovery.

APPEAL by the plaintiff from a judgment, entered in the office of the clerk of the county of Rensselaer on the 21st day of November,

1889, in favor of the defendant, dismissing the plaintiff's complaint after a trial at the Rensselaer Circuit before the court and a jury.

*Nelson Davenport,* for the appellant.

*Henry A. Merritt,* for the respondent.

LEARNED, P. J.:

The deceased, a son of plaintiff, fourteen years old, was hired by the defendant to do work on defendant's farm for board and clothing. Defendant, with the deceased and another boy, named Rivenburgh, fifteen years old, went out to a lot to have them saw logs under defendant's direction. The boys were set at this work by defendant, and they sawed one log. Then defendant and the boys arranged another log for sawing. This second log was about thirty-two feet long and six feet around. It was placed so that it would seem the middle, or about the middle, of the log rested on a stump. The place was a hillside, and the declivity was about thirty-three feet in one hundred. The log was placed with its side to the hill. The boys were stationed one on each side of the log, and were to saw the log in the usual manner with a cross-cut saw. The log was steadied upon the stump by a stick. The object of placing the log on the stump appears to have been to prevent the log from binding the saw as the work progressed. The deceased was placed on the hill above the log, Rivenburgh below, and defendant told the deceased to stay there. Defendant went away, but apparently not very far. The boys worked half an hour and then changed places. When they had sawn through the log the two parts fell on the side of the hill below the stump. The butt log began to roll down hill and the other part soon followed. The deceased ran to get out of the way of the logs, but his foot was caught after he had run about twenty-four feet, and the log rolled over him and killed him. It weighed about 3,500 pounds. The defendant was near enough to see the accident, for when the logs began to roll he called to the deceased : "Look out, bub." The learned justice nonsuited the plaintiff on the ground that the deceased disobeyed the defendant's direction in going from the position above the log to that below; and that this disobedience contributed to the death of deceased. The

SKAARUP *v.* STOVER.

plaintiff claims that the defendant was negligent in placing the log so that the parts would certainly roll down the hill when sawn apart, and in not putting some block or obstacle to prevent this accident, when putting inexperienced boys at such dangerous work, and in not warning them of the danger.

In considering what effect is to be given to the defendant's instruction when he placed the deceased above the log, we must consider the circumstances. Here were two boys nearly of the same age, and, so far as appears, of equal experience. In this mode of sawing it is necessary that one should be on each side. Where the ground on one side is higher than that on the other, different positions of the body may be required on the different sides. The deceased sat on his overcoat when working on the upper side, and naturally, after working for a time, it would be a relief to each boy to change to the other side, so as to take a new position of the body. If one side was dangerous and the other was not, there was not such a difference in the size of the boys that one could be safely exposed to the danger and the other could not. We can hardly suppose that the defendant placed the deceased on the upper side of the log in order to give him a safe position, when we see that at the same time he placed the Rivenburgh boy on the lower side in a place of danger. This would be to impute to him a disregard of the safety of the Rivenburgh boy.

Now, when defendant placed the boy at this work, if, as might be found by the jury, there was a dangerous place connected with the work, the boy should have been informed of and able to appreciate the danger, before the defendant could be held to have performed his whole duty. (*Hickey* v. *Taaffe*, 105 N. Y., 36.) There is no evidence that the danger of the situation was explained to these boys, or to either of them, or that any caution was given to them. If the boys had not changed places, then it is quite probable that Rivenburgh would have been killed in the same way; at least he would have been put in imminent peril. For, owing to the length of the sawn logs, it was difficult to escape sideways, and, in running down the hill, there was the risk of the result which befell the deceased. It seems, therefore, to us, that it was a question for the jury whether the defendant discharged his duty to the deceased, unless it can be said, as a matter of law, that the deceased ought to

have understood that he was not to go to the lower side of the log, and that to do so exposed him to danger.

The mere direction to work on the upper side and to stay there gave no warning of any danger on the lower side. The placing of Rivenburgh on the lower side showed to deceased that the defendant did not consider that side dangerous. Indeed, the defendant said afterwards that, if he had thought of it, he would have blocked the logs so that they could not roll, but that he did not think of it. This shows, as is otherwise apparent, that in placing deceased on the upper side, and telling him to stay there, the defendant was not taking care of the safety of the deceased. He was only arranging the two boys at the work in the position which seemed most convenient to them, and, therefore, most profitable to him. It, therefore, might well be found by the jury that, under the circumstances, all which the defendant said and did, did not amount to a sufficient direction and caution, and that the deceased could not have understood that the boys were prohibited from changing places. Continued work in one position becomes fatiguing, especially to boys, and probably neither of them supposed that a change of position would be an act of disobedience. Although defendant did not come back to the place before the accident, yet he was near enough to see or hear the log begin to roll, for he called out to deceased, "Look out bub," when he had gone four or five feet.

The questions, after all, are whether the defendant was guilty of negligence and whether the deceased was guilty of contributory negligence. And the fact that the deceased went to the lower side is material as bearing on this latter question and, perhaps, on the former. We think that his act was not conclusive. For if a master puts a servant at work near a dangerous place, it may not be sufficient care on the master's part to put the servant on a spot which is out of danger and simply tell him to stay there, without warning him of the peril of going to the dangerous place. And it may not always be negligence for the servant to change his position, especially when circumstances show that the place to which he goes is not considered dangerous by the master. And though a servant should disobey his master's orders, such disobedience is not punishable with death. Nor is disobedience to the master's

commands necessarily contributory negligence, when injury results to the servant. Negligence implies something more, a disregard of proper care of one's safety. It is contributory negligence, not a contributory act, which defeats a recovery.

The judgment should be reversed and a new trial granted, costs to abide event.

LANDON and MAYHAM, JJ., concurred.

Judgment reversed and new trial granted, costs to abide event.