Joseph Koehler, an Infant, by Edward J. Shanahan, his Guardian ad Litem, Respondent, v. Syracuse Specialty Manufacturing Company, Appellant.

*Master and servant — risks of the employment.*

An employee, sixteen years of age, was directed to operate a machine, by which the backs of currycombs were made by a die descending upon a plate, set in motion by the operator pressing his foot upon a lever, which he had been instructed not to do except when he wished the die to descend    He sat upon a wooden stool which stood upon the floor a little distance from the platform of the machine, but becoming tired of reaching forward to place and remove the plates, and for greater convenience, he drew the stool closer to the machine so that its front legs rested upon a platform, while its hind legs were upon the floor.

While the stool was in this position, it slipped from the platform, the plaintiff jumped, his foot came in contact with the lever and the die descended upon the plate and severely injured his hands.

The floor was considerably discolored by oil which had dripped from the machinery, and the plaintiff testified (although apparently such was not the fact) that "there was oil on the floor." "It was on the platform, too." "It was oily where the stool was."

*Held*, that presumptively the plaintiff was *sui juris*, and, in the absence of evidence tending to show that he was not qualified to understand and appreciate the situation in which he was placed and the possible injury liable to arise therefrom, he was chargeable with the same degree of care and with the same knowledge of his environment that an adult would have been charged with under the same circumstances;

That, when he entered into the defendant's service, he assumed all the risks and perils incident to the use of the machinery and appliances which were apparent to a person of ordinary observation;

That, if the floor was made slippery by the oil, it was a danger as apparent to the plaintiff as to any other person, and that a charge to the jury by which it was left to them to say whether, as a matter of fact, the plaintiff knew and could appreciate the condition of the floor, and which impliedly instructed them that they might find the defendant guilty of an omission of duty which it owed the plaintiff in failing to warn him against the liability of the stool slipping, if such slipping was something which might reasonably have been anticipated, was erroneous.

Appeal by the defendant, the Syracuse Specialty Manufacturing Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 21st day of March, 1896, upon the verdict of a

jury for $1,750 rendered after a trial at a Trial Term of the Supreme Court held in and for the county of Onondaga, and also from an order entered in said clerk's office on the 16th day of March, 1896, denying the defendant's motion for a new trial made upon the minutes.

*W. S. Andrews*, for the appellant.

*M. E. Driscoll*, for the respondent.

ADAMS, J.:

The defendant, at the times hereinafter named, was a domestic corporation engaged in the manufacture of currycombs, having its place of business at the city of Syracuse in this State.

The plaintiff, who brings this action to recover damages for a personal injury received by him while in the employ of the defendant, was a lad a little more than sixteen years of age at the time of receiving such injury.

On the 16th day of June, 1895, he applied to the defendant for employment, and his application was accepted, and at one o'clock in the afternoon of the same day he was set at work at a machine which was designed to press the backs of the currycombs into proper shape. He received instructions how to operate the machine, and continued to operate the same until about five o'clock, when, having finished all the plates furnished him, he was taken by the foreman to another machine, known as " No. 19," which was somewhat similar to but larger than the one which he first operated. This machine was designated as a punch, and was one of several of like character which were located in a row in the defendant's shop and elevated upon a platform about one inch above the floor. The punch was operated by a lever, which, when pressed by the foot, set a fly wheel in motion and caused a die to descend upon a plate with sufficient force to bend it into the shape required.

When the plaintiff was placed in charge of this machine he was warned by the foreman never to press his foot upon the lever except when he wished the die to descend, and he also received further instructions with regard to its operation.

A round wooden stool without any back was furnished the plaintiff upon which to sit while operating the machine. This stool

stood upon the floor a little distance from the platform, but, after operating the machine for a short time, the plaintiff became tired of reaching forward for the purpose of placing and removing the plates, and he thereupon drew his stool closer to the punch so that its front legs rested upon the platform and its back legs upon the floor. With the stool in this position he sat upon it, curling his feet around the front legs, and continued to operate the punch until six o'clock.

The following morning he returned to work and finding his stool upon the floor replaced it in the position just described, and resumed operations. After working for about two hours, one of the plates which he was attempting to place in position, and which it appears was a little larger in size than the others, stuck to the die so that it required some effort to remove the same and push it along against a little pin intended to regulate its position upon the form. As he was making this effort his stool in some manner slipped from the platform, and the plaintiff, supposing that it was about to tip over, gave a sudden jump or motion to save himself, in doing which his foot came in contact with the lever, which brought the punch down upon the table and upon the plaintiff's hands, injuring them in such a manner that it became necessary thereafter to amputate the first and middle fingers of the right hand, and the first finger of the left hand.

The floor of the room in which the accident occurred had been used for some two years or more, and the evidence tends to show that it had become considerably discolored in consequence of oil which had dripped from the machinery, but that it was frequently swept and was not slippery. It is also made to appear that, while at work at the first machine, the plaintiff was furnished with a long piece of iron to use in prying up the plates when they became stuck to the die, but that no such iron was furnished him when he was changed to punch No. 19.

The case was tried upon the theory that there was upon the part of the defendant an omission of duty, which it owed to the plaintiff, in two particulars: *First*, in neglecting to instruct the plaintiff as to the dangers which might be apprehended by reason of the character of the floor or of the stool furnished him upon which to sit while operating the machine; and, *second*, in failing to furnish the plain-

tiff a proper instrument with which to remove the plates from the form. These two propositions were distinctly submitted to the jury by the learned trial justice, with instructions which authorized them to render a verdict in favor of the plaintiff in the event that they were satisfied that the evidence in the case clearly established the same or either of them.

The plaintiff, at the time of receiving the injury complained of, was upwards of sixteen years of age; he was, therefore, *sui juris*, and, in the absence of evidence tending to show that he was not qualified to understand and appreciate the situation in which he was placed and the possible danger arising therefrom, he was chargeable with the same degree of care and with the same knowledge of his environment that an adult would have been charged with in the same circumstances. (*Tucker* v. *N. Y. C. & H. R. Railroad Co.,* 124 N. Y. 308.) And to this must be added the correllative assertion that, when the plaintiff entered into the defendant's service, he assumed all the risks and perils incident to the use of the machinery and appliances furnished him which were apparent to a person of ordinary observation. (*Shaw* v. *Sheldon,* 103 N. Y. 667; *Hickey* v. *Taaffe,* 105 id. 26.)

With this much determined as the law of this case, it seems to us that very little discussion is required to establish the proposition that, if the condition of the floor in the defendant's shop did in any wise contribute to the accident which produced the injury complained of, the plaintiff had just as good an opportunity to know what that condition was, and the dangers which might reasonably be apprehended therefrom, as had the defendant itself. Indeed, he testifies upon his direct examination that, "there was oil on the floor. The floor was black with oil. It was on the platform too; yes, all over the floor. It was oily where the stool was." And yet, possessed of this knowledge, the plaintiff, in order to relieve the tedium of the work in which he was engaged, placed his stool in such a position as to bring about the precise result which followed. We are by no means satisfied that the oil upon the floor can be said to have occasioned the slipping of the plaintiff's stool, for, to our minds, a much more reasonable explanation of the accident is furnished by the plaintiff himself, who testified that "I had my chair up on this platform and it slipped down, and I got scared and

I jumped like that with my foot, and it caught my fingers." It is to be borne in mind that when the stool slipped the plaintiff was engaged in an effort to adjust the plate, and with his stool tilted up in the manner described by him, it is not at all surprising that it should have responded to the pressure which his effort at adjustment undoubtedly occasioned.

But, even upon the assumption that the floor was made slippery by the oil which had, from time to time, dripped upon it, we are still unable to discover in the circumstances of this case any propriety in permitting the jury to find the defendant guilty of an omission of duty in not cautioning the plaintiff against a danger which there is no reason to suppose any one apprehended, and which was just as apparent to the plaintiff as to any other person.

It is true that, in response to a request from the defendant's counsel, the learned court did charge the jury that if the plaintiff knew that the floor was greasy and appreciated the result which was liable to happen from its condition, it was unnecessary for the defendant to give him any instructions in regard to the same, and we find that the body of the charge contains substantially the same instructions. But it was, nevertheless, left to the jury to say whether, as a matter of fact, the plaintiff knew what he had testified he did know, and whether he could appreciate that which he was just as much bound to appreciate as the defendant was, and in the event that this fact was determined adversely to the defendant, the jury were, impliedly at least, instructed that they might find the defendant guilty of an omission of duty which it owed to the plaintiff, in failing to warn him against the liability of the stool to slip, if such slipping was something which might reasonably have been anticipated.

We think the learned trial justice, in his most laudable desire to refrain from interference with the province of the jury in this case, submitted to them a question which ought to have been treated as one of law, instead of one of fact, and, as it is impossible to say that the question thus submitted did not, in some measure, at least, furnish the basis for the verdict which followed, the error is one which renders a new trial necessary.

HARDIN, P. J., FOLLETT and GREEN, JJ., concurred; WARD, J., concurred in result.

WARD, J.:

The action was to recover damages for an injury to the plaintiff's hands, which caused the amputation of several fingers, while he was in the employ of the defendant, on the 17th of June, 1895.

The defendant, at the time that the plaintiff received his injury, was engaged in Syracuse in the manufacture of currycombs, the backs of which are made of plates of soft steel, one-thirty-second of an inch thick and from three to four inches square. The proper shape of the back is given it by a machine which is operated by the foot of the operator, pressed upon a lever which sets a fly wheel in motion and causes the die to descend upon a plate and shape the back as required. This machine is placed upon an iron table about twenty-six inches from the floor. The operator sits in front of this machine; the platform on which this table is placed is an inch higher than the surrounding floor. The defendant furnishes the backs already cut and in shape for the die. All the operator has to do is to put the backs in the form and press them into shape. The plaintiff was sixteen years of age and had not the slightest experience with machinery of this kind and had never seen it operated. He applied for work at defendant's factory on the 16th of June, 1895, at one P. M. of that day, and defendant employed him at three dollars per week. The defendant had a considerable number of these machines in position. The plaintiff was taken to machine No. 18 by an employee of defendant. The employee sat down at the machine and pressed a few backs in plaintiff's presence and directed him as to how much work to do. The plaintiff completed this work about five o'clock and reported to the superintendent of the defendant that his work was done, and this official turned the plaintiff over to a foreman by the name of Koch. Koch took plaintiff to another machine, No. 19, a larger machine, but used for the same purpose as No. 18. There was a round stool, without a back, for the operator to sit on. Koch made several plates in plaintiff's presence. The plaintiff testified that he told Koch that he did not believe he could operate the machine. Koch testified that he did not remember how this was. Koch told plaintiff to keep his foot off the lever while he was putting the backs in the machine and taking them out.

It is undisputed that some of the plates would stick on being placed in and upon being taken out of the form. They were not of uniform

size. Some were too large, and had to be squeezed in, and difficulty was experienced in getting them out. At these machines it was usual for the defendant to furnish an iron to get these plates that were too large in and out of the form. This iron was of such length that, when used and the lever was pressed by any accident and the die came down, it would not involve the hand or fingers of the operator. There was no iron furnished the plaintiff with this machine.

The foreman testified that he did not furnish the plaintiff with any iron, but told him there was an iron with which to do the work of removing plates which had stuck; that he had seen the men use the iron about these machines, as well as a plate to get out the backs when they were stuck. On this subject the plain-tiff testified as follows: "He (Koch) didn't tell me to get an iron to take out these plates. He didn't show me how to do it in any way. He didn't take one of these plates and take out one of them with it, or show me how to do it that way. None of them got stuck while he was working at them, until after he left. *Nobody furnished me any sort of an iron to take out these plates with.* I didn't have any iron. I didn't use one of these plates for that purpose. I didn't know anything about their being used in that way. Mangan (the superintendent) told me the next day to take out the plates with the fingers."

The foreman and superintendent were passing around the shop where these machines were located during the time the plaintiff was at work upon machine No. 19, and it does not appear that further instructions were given him with reference to operating this machine. He tried oil upon the machine two or three times to assist him in removing the plates. He worked without accident that evening a short time, and returned in the morning at seven and worked until nine o'clock, when he was injured. There was a conflict in the evidence as to whether the floor around this machine was slippery with oil. It was undisputed that there was oil upon the floor to some extent. The plaintiff was unused to working on these stools and found it difficult to work the machine unless he got close up to it, and so he put the fore legs of the stool upon the edge of the platform upon which the machine stood, leaving the hind legs upon the floor. He was so close to the machine that he had to curl his legs around the side

rounds of the stool, at least he did so to some extent.   He also testified that it tired him to sit so far away from the machine and reach over upon the machine to do his work, which was the reason for his moving the stool up closer.   The plaintiff's testimony concerning the accident was as follows : " The next morning I came to work and got a greasy rag   *   *   *   and oiled up the thing.   Then I went on and worked away, and all at once my finger got catched. I had my chair up on this platform and it slipped down, and I got scared and I jumped like that with my foot (his foot accidentally struck the lever), and it caught my fingers and I tried to get them out and I couldn't.   *   *   *   I looked over and saw Koch, and some of them over there, and I whistled, and they came over and took my fingers out.   There was oil on the floor.   The floor was black with oil.   It was on the platform too.   *   *   *   It was oily where the stool was.   At that time the front legs of the stool were on the platform and the hind legs were on the floor.   My feet were on the side rounds of the chair, one on each side.   I was going to take out this plate which was in the die.   The plate wasn't formed.   I pressed it in and it wasn't far enough up to the pin, and I pushed it in with my fingers, and I was going to take it out and I couldn't get it out, and my chair slipped and I crushed my fingers.   I was pulling when my chair slipped.   When the chair slipped I was trying to get the plate out with my fingers. *   *   *   It wouldn't come out and I thought I could push it up. I was going to pry it up.   First I had hold of the ends and I couldn't get it that way, and I thought I would slide it up to the pin, then I could form it, but just as I had hold this way and was going to push it along the chair slipped, and it came down on my fingers and I tried to get them out."

The exceptions we are to consider upon this appeal were taken to the court's refusal to nonsuit the plaintiff and to the charge of the court.   The court submitted to the jury the questions whether the defendant gave the plaintiff a proper place to work in, taking into account the stool and the floor, and whether it gave him proper instructions in reference to the way that the plaintiff should work there, and whether the defendant should not have furnished an iron of the kind described, or something to take its place, in placing the

backs in and removing them, and the appellant insists that, upon the evidence contained in the record before us, it was not proper to submit to the jury the question of the defendant's negligence, and that it appears from the evidence that the plaintiff was guilty of such contributory negligence that the trial court should have so held as a matter of law.

The question of contributory negligence was properly submitted to the jury under the circumstances of this case.

The serious point is, whether the question of the defendant's negligence should have been submitted to the jury. The plaintiff was a lad of sixteen years, without any experience or knowledge of the use of these machines, and, while he was aware of the danger of putting his foot upon the lever when his hands were under the die, he met a difficulty in removing the plates that were too large for the form, or that stuck in it, which the jury might have found from the evidence was very difficult for an inexperienced person to obviate.

There was evidence also upon which they could find that the only information given to the plaintiff as to the manner of removing the plates which stuck in the form, and the only knowledge he had of the manner of removing them, was by the use of his fingers, as he had been told to do by the defendant's superintendent; that at the time of the accident he was engaged in attempting to remove with his hands a " back " that gave him considerable trouble, and that, while doing the best he could under the circumstances, the stool slipped, his foot fell upon the lever, and he was maimed for life. It would seem that it was absolutely the duty of the defendant to furnish the plaintiff with an iron, or some implement, by which this work could be done without endangering his hands. The defendant recognized this fact and duty by providing suitable irons for that purpose in its manufacturing establishment, but there was evidence upon which the jury could find that, in this instance, that duty was wholly disregarded and the plaintiff was placed at a dangerous work, without this protection or any instruction upon the subject.

The defendant's counsel, however, claims that the absence of this iron was not the proximate cause of the plaintiff's injury. We think that the jury might have fairly inferred from the evidence that, if the plaintiff had had an iron, with proper instructions as to its use, he would have used it in attempting to remove the " back "

at the time he was injured. It would have been the natural thing for him to have done. The plaintiff tried to use his pocket knife for that purpose until he broke the blade, and he resorted to oiling the machine. The jury were permitted to take note of the whole situation that surrounded the plaintiff at the time of the accident. As before said, many of the backs that were furnished the plaintiff to place in the forms were too large, or not cut in proper shape, for that purpose; and the evidence does not explain why this was so, and why the defendant did not, in the present advanced state of machinery, furnish to the plaintiff " backs " of the proper size to use. If it had, the accident might not have occurred.

The difficulty of the defendant's contention lies in the fact, as the jury may have found, that the inexperienced plaintiff was put to work upon a machine that he did not understand, without complete instructions, and without being furnished with the means for removing the backs that stuck and were too large, and that he was required to sit upon a stool on a slippery floor, where the defendant ought to have anticipated that injury might come to the plaintiff in attempting to do the work required of him. The defendant cites from *Crown* v. *Orr* (140 N. Y. 450), and *Ogley* v. *Miles* (139 id. 458), and *Buckley* v. *G. P. & R. M. Co.*, 113 id. 540), as sustaining its position.

An examination of these cases shows such a different state of facts in each case from that existing in the one before us that they are not controlling here. But, as bearing upon this case, and as strongly sustaining the views here expressed, reference may be had to *Skaarup* v. *Stover* (56 Hun, 86); *Heavey* v. *Hudson River Water Power & Paper Co.* (57 id. 339); *Brennan* v. *Gordon* (118 N. Y. 489); *McCarragher* v. *Rogers* (120 id. 526–534); *Finnerty* v. *Prentice* (19 Alb. L. J. 160; affd., 75 N. Y. 615); *Owens* v. *Ernst* (1 Misc. Rep. 388; S. C., 21 N. Y. Supp. 426); *Slacer* v. *Field Engineering Co.* (4 Misc. Rep. 493; S. C., 24 N. Y. Supp. 550); *Ryan* v. *H. W. Johns Manufacturing Co.* (18 id. 754).

But the appellant earnestly insists that it was error for the trial court to submit to the jury, as a distinct proposition, the question whether there was an omission of duty on the part of the defendant to instruct the plaintiff as to the dangers that might be apprehended by reason of the character of the floor or of the stool fur-

nished the plaintiff upon which he was to sit while operating the machine, the contention being that the condition of the floor and of the stool and its relations to the machine were apparent to the plaintiff and about which he needed no instructions, and that he took the risk of the situation in that regard. If the charge of the trial court, taking it altogether, is to be construed as distinctly charging that this ground of negligence was sufficient to go to the jury irrespective of the failure to furnish the means of extricating the forms from the die, and of general instruction as to the entire method of the work, of which there is some doubt, it was probably error to so charge, and upon that ground alone I concur with the majority of the court in granting a new trial.

Judgment and order reversed and a new trial ordered, with costs to abide the event.