KOEHLER v. SYRACUSE SPECIALTY MANUF'G CO.

(Supreme Court, Appellate Division, Fourth Department.  December 16, 1896.)

MASTER AND SERVANT—PLACE TO WORK—WHEN NEGLIGENCE A QUESTION OF
LAW.

   Negligence is a question of law where plaintiff claimed to have been injured
   by the oily condition of a floor, and the evidence showed that he was 16 years
   old, and knew of the condition of the floor when he undertook the work.

Appeal from trial term, Onondaga county.

Action by Joseph Koehler, an infant, by Edward Shanahan, his guardian ad litem, against the Syracuse Specialty Manufacturing Company, for personal injuries.  From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial on the minutes, defendant appeals.  Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

W. S. Andrews, for appellant.
M. F. Driscoll, for respondent.

ADAMS, J.   The defendant, at the times hereinafter named, was a domestic corporation engaged in the manufacture of currycombs, with its place of business at the city of Syracuse, in this state.   The plaintiff, who brings this action to recover damages for a personal injury received by him while in the employ of the defendant, was a lad a little more than 16 years of age at the time of receiving such injury.   On the 16th day of June, 1895, he applied to the defendant for employment, and his application was accepted, and at 1 o'clock in the afternoon of the same day he was set at work at a machine which was designed to press the backs of the currycombs into proper shape.   He received instructions how to operate the machine, and continued to operate the same until about 5 o'clock, when, having finished all the plates furnished him, he was taken by the foreman to another machine, known as "No. 19," which was somewhat similar to, but larger than, the one which he first operated.   This machine was designated as a "punch," and was one of several of like character, which were located in a row in the defendant's shop, and elevated upon a platform about one inch above the floor.   The punch was operated by a lever which, when pressed by the foot, set a fly wheel in motion, and caused a die to descend upon a plate with sufficient force to bend it into the shape required.   When the plaintiff was placed in charge of this machine he was warned by the foreman never to press his foot upon the lever except when he wished the die to descend, and he also received further instructions with regard to its operation.   A round wooden stool without any back was furnished the plaintiff upon which to sit while operating the machine.   This stool stood upon the floor a little distance from the platform, but, after operating the machine for a short time, the plaintiff became tired of reaching forward for the purpose of placing and removing the plates, and he thereupon drew his stool closer to the punch, so that its front legs rested upon the platform and its

back legs upon the floor. With the stool in this position, he sat upon it, curling his feet around the front legs, and continued to operate the punch until 6 o'clock. The following morning he returned to work, and, finding his chair upon the floor, replaced it in the position just described, and resumed operations. After working for about two hours, one of the plates which he was attempting to place in position, and which it appears was a little larger in size than the others, stuck to the die so that it required some effort to remove the same and push it along against a little pin. intended to regulate its position upon the form. As he was making this effort, his chair in some manner slipped from the platform, and the plaintiff, supposing that it was about to tip over, gave a sudden jump or motion to save himself, in doing which his foot came in contact with the lever, which brought the punch down upon the table and upon the plaintiff's hands, injuring them in such a manner that it became necessary thereafter to amputate the first and middle fingers of the right hand and the first finger of the left hand. The floor of the room in which the accident occurred had been used for some two years or more, and the evidence tends to show that it had become considerably discolored in consequence of oil which had dripped from the machinery, but that it was regularly swept, and was not slippery. It is also made to appear that while at work at the first machine the plaintiff was furnished with a long piece of iron to use in prying up the plates when they became stuck to the die, but that no such iron was furnished him when he was changed to punch No. 19.

The case was tried upon the theory that there was an omission of duty upon the part of the defendant, which it owed to the plaintiff, in two particulars: First, in neglecting to instruct the plaintiff as to the dangers which might be apprehended by reason of the character of the floor or of the stool furnished him upon which to sit while operating the machine; and, second, in failing to furnish the plaintiff a proper instrument with which to remove the plates from the form. And these two propositions were distinctly submitted to the jury by the learned trial justice, with instructions which authorized them to render a verdict in favor of the plaintiff in the event that they were satisfied that the evidence in the case clearly established the same or either of them. The plaintiff, at the time of receiving the injury complained of, was upwards of 16 years of age. He was, therefore, sui juris, and, in the absence of evidence tending to show that he was not qualified to understand and appreciate the situation in which he was placed, and the possible danger arising therefrom, he was chargeable with the same degree of care, and with the same knowledge of his environment, as an adult would have been in the same circumstances. Tucker v. Railroad Co., 124 N. Y. 308, 26 N. E. 916. And to this must be added the correlative assertion that when the plaintiff entered into the defendant's service he assumed all the risks and perils incident to the use of the machinery and appliances furnished him which were apparent to a person of ordinary observation. Shaw v. Sheldon, 103 N. Y. 667, 9 N. E. 183; Hickey v. Taaffe, 105 N. Y. 26, 12 N. E. 286.

With this much determined as the law of the case, it seems to us

that very little discussion is required to establish the proposition that, if the condition of the floor in the defendant's shop did in any wise contribute to the accident which produced the injury complained of, the plaintiff had just as good an opportunity to know what that condition was, and the dangers which might reasonably be apprehended therefrom, as had the defendant itself. Indeed, he testifies upon his direct examination that "there was oil on the floor. The floor was black with oil. It was on the platform, too. Yes, sir; all over the floor. It was oily where the stool was." And, yet, possessed of this knowledge, the plaintiff, in order to relieve the tedium of the work in which he was engaged, placed his stool in such a position as to bring about the precise result which followed. We are by no means satisfied that the oil upon the floor can be said to have occasioned the slipping of the plaintiff's stool, for, to our minds, a much more reasonable explanation of the accident is furnished by the plaintiff himself, who testified that "I had my chair upon this platform, and it slipped down, and I got scared, and I jumped like that with my foot, and it caught my fingers." It is to be borne in mind that when the stool slipped the plaintiff was engaged in an effort to adjust the plate; and, with his stool tilted up in the manner described by him, it is not at all surprising that it should have responded to the pressure which his effort at adjustment undoubtedly occasioned. But even upon the assumption that the floor was made slippery by the oil which had, from time to time, dripped upon it, we are still unable to discover in the circumstances of this case any propriety in permitting the jury to find the defendant guilty of an omission of duty in not cautioning the plaintiff against a danger which there is no reason to suppose any one apprehended, and which was just as apparent to the plaintiff as to any other person. It is true that, in response to a request from the defendant's counsel, the learned court did charge the jury that, if the plaintiff knew that the floor was greasy, and appreciated the result which was liable to happen from its condition, it was unnecessary for the defendant to give him any instructions in regard to the same; and we find that the body of the charge contains substantially the same instructions. But it was, nevertheless, left to the jury to say whether, as a matter of fact, the plaintiff knew what he had testified he did know, and whether he could appreciate that which he was just as much bound as the defendant to appreciate; and in the event that this fact was determined adversely to the defendant, the jury were, impliedly at least, instructed that they might find the defendant guilty of an omission of duty which it owed to the plaintiff in failing to warn him against the liability of the stool to slip, if such slipping was something which might reasonably have been anticipated. We think the learned trial justice, in his most laudable desire to refrain from interference with the province of the jury in this case, submitted to them a question which ought to have been treated as one of law, instead of one of fact. And, as it is impossible to say that the question thus submitted did not, in some measure at least, furnish the basis for the verdict which followed, the error is one which renders a new trial necessary.

Judgment and order reversed, and a new trial granted, with costs to abide the event.

HARDIN, P. J., and FOLLETT and GREEN, JJ., concur. WARD, J., concurs in result. For concurring opinion, see 42 N. Y. Supp. 1105.