### KOEHLER v. SYRACUSE SPECIALTY MANUF'G CO.

(Supreme Court, Appellate Division, Fourth Department.    December 16, 1896.)

MASTER AND SERVANT—NEGLIGENCE—PROPER INSTRUCTION OF EMPLOYE.

In an action to recover for a personal injury to a boy while working at a machine in defendant's manufacturing works, the accident resulting from the slipping of the stool on which he sat, to operate the machine, on the floor, which had oil upon it, it is error to submit to the jury the question of defendant's negligence in failing to instruct plaintiff as to the condition of the floor and stool, and the danger to be apprehended therefrom; such facts being so apparent that no instruction was required. Per Ward, J.

Concurring opinion. For majority opinion, see 42 N. Y. Supp. 182.

The action was to recover damages for an injury to the plaintiff's hand, which caused the amputation of several fingers, while he was in the employ of the defendant, on the 17th of June, 1895. The defendant, at the time that the plaintiff received his injury, was engaged in the manufacture of currycombs in Syracuse, the backs of which are made of plates of soft steel $1/32$ of an inch thick, and from 3 to 4 inches square. The proper shape of the back is given it by a machine which is operated by the foot of the operator, pressed upon a lever, which sets a fly wheel in motion, and causes the die to descend upon a plate, and shape the back as required. This machine is placed upon an iron table about 26 inches from the floor. The operator sits in front of this machine. The platform on which this table is placed is an inch higher than the surrounding floor. The defendant furnishes the backs already cut and shaped for the die. All the operator has to do is to put the backs in the form, and press them into shape. The plaintiff was 16 years of age, and had not the slightest experience with machinery of this kind, or seen it operated. He applied for work at defendant's factory on the 16th of June, 1895, at 1 p. m. of that day, and defendant employed him, at three dollars per week. The defendant had a considerable number of these machines in position. The plaintiff was taken to machine No. 18 by an employé of defendant. The employé sat down at the machine, and pressed a few backs in plaintiff's presence, and directed him how much work to do. The plaintiff completed this work about 5 o'clock, and reported to the superintendent of the defendant that his work was done, and this official turned the plaintiff over to the foreman by the name of Koch. Koch took plaintiff to another machine, No. 19, a larger machine, but used for the same purpose as No. 18. There was a round stool for the operator to sit on, without a back. Koch made several plates in plaintiff's presence. The plaintiff testified that he told Koch that he did not believe he could operate the machine. Koch testified that he did not remember how this was. Koch told plaintiff to keep his foot off the lever while he was putting the backs in the machine and taking them out. It is undisputed that some of the plates would stick in placing in and upon being taken out of the form. They were not of uniform size. Some were too large, and had to be squeezed in, and difficulty was experienced in getting them out. At these machines, it was usual for the defendant to furnish an iron to get these plates that were stuck in and out of the form. This iron was of such length that when used, if the lever was pressed by any accident, and the press came down, it would not involve the hand or fingers of the operator. There was no iron furnished the plaintiff with this machine. The foreman testified that he did not furnish the plaintiff with any iron, but told him that there was an iron to do the work with; that he had seen the men use the iron about these machines, as well as a plate, to get out the backs when they were stuck. On this subject the plaintiff testified as follows: "He [Koch] didn't tell me to get an iron to take out these plates. He didn't show me how to do it in any way. He did not take one of these plates, and take out one of them with it, or show me how to do it that way. None of them got stuck while he was working at them,—until after he left. Nobody furnished me with any sort of an iron to take out these plates with. I didn't have any iron. I didn't use one of these plates for that purpose. I didn't know anything about their being used in that way. Mangan [the superintendent] told me the next day to take out the plates with my fingers." The foreman and superintendent were passing around the shop where these machines were located during the time the plaintiff was at work upon No. 19, and it does not appear that further instructions were given him with reference to operating this machine. He tried oil upon the machine two or three times, to assist him in removing the plates. He worked without accident that evening, a short time, and returned in the morning at 7, and worked until 9 o'clock, when he was injured. There was a conflict in the evidence as to whether the floor was slippery with oil around this machine. It was undisputed that there was oil upon the floor to some extent. The plaintiff was unused to working on these stools, and found it difficult to work the machine unless he got close up to it; and so he put the fore legs of the stool upon the edge of the platform upon which the machine stood, leaving the hind legs upon the floor. He was so

close to the machine that he had to curl his legs around the side of the stool; at least, he did so to some extent. He also testified that it tired him to sit so far away from the machine, and reach over upon the machine to do his work, which was the reason for his moving the stool up closer. The plaintiff's testimony concerning the accident was as follows: "The next morning I came to work, and got a greasy rag, * * * and oiled up the thing. Then I went on, and worked away, and all at once my finger got catched. I had my chair on this platform, and it slipped down, and I got scared, and I jumped like that with my foot [his foot accidentally struck the lever]; and it caught my fingers, and I tried to get them out, and I couldn't. * * * I looked over, and saw Koch, and I whistled, and they came over, and took my fingers out. There was oil on the floor. The floor was black with oil. It was on the platform, too. * * * It was oily where the stool was. At that time the front legs of the stool were on the platform, and the hind legs were on the floor. My feet were on the side rounds of the chair, one on each side. I was going to take out this plate which was in the die. The plate wasn't formed. I pressed it in, and it wasn't far enough up to the pin, and I pushed it in with my fingers, and I was going to take it out, and I couldn't get it out, and my chair slipped, and I crushed my fingers. I was pulling when my chair slipped. When the chair slipped, I was trying to get the plate out with my fingers. * * * It wouldn't come out, and I thought I could push it out. I was going to pry it up. First I had hold of the ends, and I couldn't get it that way. I thought I would slide it up to the pin; then I could form it; but just as I had hold of it this way, and was going to push it along, the chair slipped, and it came down on my fingers, and I tried to get them out."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

W. S. Andrews, for appellant.

M. E. Driscoll, for respondent.

WARD, J. The exceptions we are to consider upon this appeal were taken to the court's refusal to nonsuit the plaintiff, and to the charge of the court. The court submitted to the jury the questions whether the defendant gave the plaintiff a proper place to work in, taking into account the stool and the floor, and whether it gave him proper instructions in reference to the way that the plaintiff should work there, and whether the defendant should not have furnished an iron of the kind described, or something to take its place, in placing the backs in, and removing them; and the appellant insists that, upon the evidence contained in the record before us, it was not proper to submit to the jury the question of the defendant's negligence, and it appears from the evidence that the plaintiff was guilty of such contributory negligence that the trial court should have so held, as a matter of law. The question of contributory negligence was properly submitted to the jury, under the circumstances of this case. The serious point is whether the question of the defendant's negligence should have been submitted to the jury. The plaintiff was a lad of 16 years, without any experience or knowledge of the use of these machines; and, while he was aware of the danger of putting his foot upon the lever when his hands were in the die, he met a difficulty in removing the plates that were too large for the form, or that stuck in it, which the jury might have found from the evidence was very difficult for an inexperienced person to obviate. There was evidence, also, upon which they could find that the only information given to

the plaintiff as to the manner of removing the plates which stuck in the form, and the only knowledge he had of the manner of removing them, was by the use of his fingers, as he had been told to do by the defendant's superintendent; that, at the time of the accident, he was engaged in attempting to remove with his hands a "back" that gave him considerable trouble; and, while doing the best he could under the circumstances, the stool slipped, his foot fell upon the lever, and he was maimed for life. It would seem that it was absolutely the duty of the defendant to furnish the plaintiff with an iron or some implement by which this work could be done without endangering his hands. The defendant recognized this fact and duty by providing suitable irons for that purpose in its manufacturing establishment; but there was evidence upon which the jury could find that in this instance that duty was wholly disregarded, and the plaintiff was placed at a dangerous work, without this protection or any instruction upon the subject.

The defendant's counsel, however, claims that the absence of this iron was not the proximate cause of the plaintiff's injury. We think that the jury might have fairly inferred from the evidence that if the plaintiff had had an iron, with proper instructions as to its use, he would have used it in attempting to remove the "back" at the time he was injured. It would have been the natural thing for him to have done. The plaintiff tried to use his pocket knife for that purpose, until he broke the blade, and he resorted to oiling the machine. The jury were permitted to take note of the whole situation that surrounded the plaintiff at the time of the accident. As before said, many of the backs that were furnished the plaintiff to place in the forms were too large, or not cut in proper shape, for that purpose; and the evidence does not explain why this was so, and why the defendant did not, in the present advanced state of machinery, furnish to the plaintiff "backs" of the proper size to use. If it had, the accident might not have occurred.

The difficulty of the defendant's contention lies in the fact, as the jury may have found, that the inexperienced plaintiff was put to work upon a machine that he did not understand, without complete instructions, and without being furnished with means of removing the backs that stuck and were too large, upon a stool, on a slippery floor, where the defendant ought to have anticipated that injury might come to the plaintiff in attempting to do the work required of him.

The defendant cites Crown v. Orr, 140 N. Y. 450, 35 N. E. 648; Ogley v. Miles, 139 N. Y. 458, 34 N. E. 1059; and Buckley v. Manufacturing Co., 113 N. Y. 540, 21 N. E. 717,—as sustaining its position. An examination of these cases shows such a different state of facts in each case from the one before us that they are not controlling here. But as bearing upon this case, and as strongly sustaining the views here expressed, reference may be had to Skaarup v. Stover, 56 Hun, 86, 9 N. Y. Supp. 92; Heavey v. Paper Co., 57 Hun, 339, 10 N. Y. Supp. 385; Brennan v. Gordon, 118 N. Y. 489, 23 N. E. 810; McCarragher v. Rogers, 120 N. Y. 526–534, 24 N. E. 812; Finnerty v. Prentice, 19 Alb. Law J. 160, affirmed 75 N. Y. 615; Owens v. Ernst, 1 Misc. Rep.

388, 21 N. Y. Supp. 426; Slacer v. Engineering Co., 4 Misc. Rep. 493, 24 N. Y. Supp. 550; Ryan v. Manufacturing Co. (City Ct. Brook.) 18 N. Y. Supp. 754.

But the appellant earnestly insists that it was error for the trial court to submit to the jury the question, as a distinct proposition, whether there was an omission of duty on the part of the defendant to instruct the plaintiff as to the dangers that might be apprehended by reason of the character of the floor or of the stool furnished the plaintiff upon which he was to sit while operating the machine; the contention being that the condition of the floor and the stool, and its relations to the machine, were apparent to the plaintiff, and about which he needed no instructions, and he took the risk of the situation in that regard. If the charge of the trial court, taking it altogether, is to be construed as distinctly charging that this ground of negligence is sufficient to go to the jury, irrespective of the failure to furnish the means of extricating the forms from the die, and of general instruction as to the entire method of the work, of which there is some doubt, it was probably error to so charge; and upon that ground alone I concur with the majority of the court in granting a new trial.