## KALBACH v. ROSS.

(Supreme Court, Appellate Division, Fourth Department. May 3, 1911.)

MASTER AND SERVANT (§ 109*)—INJURIES—NEGLIGENCE.

Defendant sent intestate, an experienced wagoner, with a wagon to bring a casting, weighing some 3,800 pounds, from a freight house, and while the casting was being hauled away it slipped toward the rear of the wagon bed over the hind bolster, causing the wagon bed to tip up and turn over. Intestate, having noticed the casting slipping, directed the boy to get some additional blocking just before the wagon bed tipped up. The wagon bed furnished was that ordinarily used. *Held*, that defendant was not negligent in not furnishing a wagon box which was fastened to the front bolster or axle, so that it could not have tipped up, unless it turned the running gear at the front end of the wagon.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 204; Dec. Dig. § 109.*]

Kruse, J., dissenting.

Action by Gottfried Kalbach, as administrator of the estate of Carl Walter Kalbach, deceased, against Clinton M. Ross. Plaintiff moves for a new trial on a case containing exceptions, after nonsuit. Exceptions overruled, motion denied, and judgment directed upon the nonsuit.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Carlton E. Ladd, for the motion.
Charles A. Dolson, opposed.

McLENNAN, P. J. The material facts are not in dispute, and, a nonsuit having been granted, plaintiff is entitled to the most favorable inferences deducible therefrom.

The accident which is the subject of this litigation occurred at about noon on the 26th day of July, 1909. At the time plaintiff's intestate was employed by defendant as a teamster, and in the regular course of his employment drove a pair of horses drawing a heavy wagon to the freight house of the Lehigh Valley Railroad Company in the city

of Buffalo to obtain for his employer a crusher head, so-called, being a casting, funnel-shaped and weighing upwards of 3,800 pounds. The employés of the Lehigh Valley Railroad Company, upon the arrival of the decedent, defendant's employé, loaded the casting into the wagon, and placed the smaller end of the casting toward the front end of the wagon and the heavier end toward the rear, about two or three inches in front of the hind bolster and axle, and such employés of the Lehigh Valley Railroad Company placed some pieces of boards against the crusher head to keep it in position. After the crusher head had been so located, plaintiff's intestate started with it to take it to defendant's factory or plant over various streets in the city, which were more or less uneven. In thus proceeding with the load, plaintiff's intestate discovered that the casting was slipping backward; and he, with a young boy whom he had asked to ride with him, assumed to remedy the difficulty by blocking the casting with a piece of stone or otherwise. At a certain point in the journey, when plaintiff's intestate had asked the young man riding with him to get some additional blocking for the casting, plaintiff's intestate stepping back to remedy the difficulty, the casting having slipped back over the hind bolster or axle, the equilibrium was lost, and the box was turned over with the plaintiff's intestate in it, and he was killed. The charge of negligence is that the defendant should have provided a wagon, the box or superstructure of which was so fastened to the head-end bolster or wheel that it could not have turned, unless it turned the running gear at the front end of the wagon.

Really, only two questions are presented by this appeal: First, was plaintiff's intestate guilty as a matter of law of contributory negligence? and, secondly, in any event was the defendant guilty of actionable negligence in sending plaintiff's intestate to draw this casting from the station of the Lehigh Valley Railroad Company in the wagon and in the manner in which he did?

As appears by the evidence of the decedent's father, he, the decedent, was a man of experience. He was 16 years and 3 months of age at the time of the accident. He had lived with his father all his life, attended school until he was 14 years of age, and then started out to work. First he worked in a drug store, washing dishes and selling ice cream. He afterwards worked for a chicken dealer about a year and a half, killing chickens and delivering them. Next he worked with a tree gang, so called, in the city of Buffalo. He took limbs away and squirted stuff on the trees. Then he worked for the defendant, driving his teams about the city as required in defendant's business. The father says that he was a pretty smart boy, weighed about 130 pounds, and that he was a well and tough boy. Another witness called by the plaintiff, and who speaks of the deceased's experience, says, in substance, that the deceased had worked twice for the defendant; that the first time he came was about in October, 1908; that he worked then about seven weeks; that Mr. Ross (the defendant) is in the business of contractor, and was engaged in taking all sorts of material from his plant, which was an extensive one, to the various railroad freight offices, and receiving from them material and other supplies necessary

to and required in his business. It would seem clear from the evidence that the decedent was sui juris, and that he was qualified to understand and appreciate the situation in which he was placed and the possibility of danger arising therefrom. He was charged with the same degree of care and the same knowledge of his environment that an adult would have been charged with under the same circumstances. Koehler v. Syracuse Specialty Manufacturing Co., 12 App. Div. 50, 42 N. Y. Supp. 182, 1105.

Plaintiff's intestate, being thus a man of experience in drawing material to and from the factory of the defendant, and having loaded upon his wagon the casting in question, and it having been called to his attention that such casting was slipping backwards, so that the weight would have gotten behind the hind bolster or axle, it seems clear that he was guilty of contributory negligence in not remedying the difficulty before the accident occurred, which clearly he could have done by placing a blocking under the casting with stone, wood, or otherwise, which would have prevented it from slipping backward. The whole course of conduct on the part of the plaintiff's intestate indicates most unmistakably that he knew it was essential to keep the equilibrium of the crusher head in front of the hind axle, and also that he fully appreciated how such result might be accomplished, to wit, by blocking the crusher head, either by stone, brick, or wood, in such manner that it could not slip back so far as to bring the equilibrium behind the hind bolster or axle of the wagon. He and his young associate made such attempt, but in an ineffective manner, and the accident resulted.

Upon this branch of the case it would therefore appear that plaintiff's intestate was sui juris, was a man of experience, and was sent by the defendant, in the ordinary course of business, to get a load or casting from the Lehigh Valley Railroad freight office and bring it to his plant; and it is suggested that he, the decedent, was not guilty of negligence in moving such casting by failing to see, as he progressed over the streets of the city of Buffalo, that such casting was not kept in such place upon the wagon as would cause it not to overturn the same. Suppose that, instead of slipping backwards, the casting had slipped sideways until its whole weight came upon one side of the wagon, and thus overturned it, and that the plaintiff's intestate had discovered such tendency to slip to one side. Would he, with that knowledge and with his experience, if he could not have obviated the difficulty, have been justified in driving forward, notwithstanding the slipping to one side, which in the ordinary course would have overturned the wagon? Plaintiff's intestate in this case was sui juris, was a man of experience, and knew what the result would be if the crusher head which he was drawing got behind the bolster or axle on the wagon which he was driving; and when he found that such casting was practically at that dangerous spot, instead of stopping, he went on, and the accident which caused his death resulted. We think that as a matter of law the plaintiff's intestate was guilty of contributory negligence, and such as to prevent a recovery in this case.

It is also concluded that the evidence in this case does not establish

actionable negligence on the part of the defendant. The defendant sent its employé, plaintiff's intestate, who was his teamster and a man of experience, to first take a load of dynamite to the New York Central freight office, consisting of 25 or 30 boxes, weighing about 50 pounds each, and after unloading such dynamite he was told to go to the Lehigh Valley freight office for the casting in question. He was given a wagon that was perfect in all its parts, and, according to the evidence of the witnesses, a wagon such as is ordinarily used in such business. The only suggestion made as a ground of negligence on the part of the defendant, so far as the wagon is concerned, is that the box should have been fastened to the bolster or forward wheel, so that, if the box raised up, the bolster and wheels would come with it. The evidence shows most conclusively and clearly that the kind of wagon which was used was in ordinary use, and was the kind of wagon usually employed for such purpose and in such business, and we fail to see how there can be any charge of negligence predicated, as against the defendant, because he did not send plaintiff's intestate out with a wagon which could not be upset unless the forward running gear was lifted off of the ground. I suppose that, if a wagon such as is suggested by the plaintiff's counsel should have been used, to wit, a wagon the box of which was made fast to the forward running gear, if the crusher head had been placed near the very back end of such wagon, and had slipped a little farther back, it would raise the forward running gear and the casting, and the same accident would have occurred.

We think the defendant was not guilty of actionable negligence, because he sent an experienced man, with a wagon perfect in every respect, and such as was in ordinary use, to take this casting from the freight office of the Lehigh Valley Railroad Company to his plant or place of business, notwithstanding it may have been loaded in such manner, or permitted after being put on the wagon to remain in such position, as to cause the overturning of the load. The court could almost take judicial notice of the fact that it also appears by the evidence that usually boxes or racks of wagons are not fastened to the forward running gear, that there are upon either side of the hind bolster cleats to prevent the rack or box from slipping forward or backward, and that it is always understood that it is not safe or good loading to put the major part of the load behind the hind axle or bolster, because in that event the front end of the box or rack will overturn. Every ordinary teamster, even the most inexperienced, understands this proposition. That the plaintiff's intestate understood it appears clearly by the evidence. He sought to remedy the difficulty, and by his neglect it was not thoroughly remedied, and he went on, relying upon what he thought would answer, until the accident occurred.

It is suggested that decedent ought to have been instructed by the defendant as to the danger resulting from carrying this casting, in case it was not properly loaded and blocked, so as to prevent it from slipping backward over the hind bolster or axle. There is not a particle of evidence in the case to indicate that the deceased was not given full instructions in that regard. In fact, there is no evidence upon the subject. We conclude, upon the whole evidence, that the plaintiff

failed to establish that his intestate was free from contributory negligence, or that the defendant was guilty of actionable negligence in the premises.

We therefore conclude that the plaintiff's exceptions should be overruled, and judgment should be awarded for the defendant on the nonsuit, with costs.

Plaintiff's exceptions overruled, motion for new trial denied, with costs, and judgment directed for the defendant upon the nonsuit, with costs. All concur (SPRING and ROBSON, JJ., upon the ground that the proof fails to show actionable negligence of the defendant), except KRUSE, J., who dissents in a memorandum.

KRUSE, J. (dissenting). I do not think the deceased boy was chargeable with the same care as an adult. It is a matter of common knowledge that a boy of 16 does not have the mature judgment, ordinarily, of an adult. Whether he exercised such care, foresight, and prudence in the work he was doing as a boy of his age, intelligence, and experience would ordinarily exercise was a question of fact, as it seems to me. And so was the question of the assumption of risk.

The more serious question is as to whether the evidence is sufficient to make out a lack of care and prudence upon the part of the defendant. The fault in the wagon, as I see it, as regards its use in transporting the casting, is not so much in not having the box fastened to the front axle or running gear, as in having the rear of the box lower than the front and extend beyond the rear axle, so that the casting would naturally slip back and tip up the box, as it did. In the absence of any evidence to the contrary, it may be presumed that the defendant knew the shape, weight, and condition of the casting, and as well the condition of the wagon itself. Knowing these conditions, I think it cannot be held as a matter of law that a reasonably prudent person would not have foreseen that, as the casting was being transported in the wagon, it might slip, and eventually get far enough beyond the rear axle to cause the box to tip up. Whether defendant was negligent in sending this 16 year old boy after this casting, with a vehicle such as this, I think was a question of fact.