Benjamin S. Rosenberg, Respondent, v. Occidental Trading Company, Appellant.

First Department, November 7, 1919.

Attachment — levy of attachment upon alleged debt owing in this State to foreign corporation — evidence not establishing credit of defendant subject to attachment — process — service of summons vacated.

Where a bank in this State was requested by telegram to place a certain sum of money to the credit of a smelting company, payable upon the presentation of bills of lading which shippers were to make out to their own order and indorsed to the defendant, a trading company incorporated under the laws of another State, and subsequently the bank was notified

that the smelting company refused to accept the proposed credit, the defendant has no credit in this State subject to levy under a warrant of attachment. This, because, *first*, the credit was to be given to the smelting company and the defendant would not be entitled to the money under any circumstances, and *second*, the credit was not unrestricted, being payable only upon the presentation of the bills of lading, which in fact were never presented.

As it will be presumed that the defendant, to which the bills of lading were to be indorsed, had either deposited securities with the party ordering the credit, or had pledged its own credit, the attachment became a cloud upon the title to said securities or credit so as to give the defendant a standing to move to vacate the attachment and to set aside the summons in the action upon a special appearance for that purpose.

*It seems*, however, that an unrestricted credit subject unconditionally, except as to amount, to any draft drawn by the person to whose favor the credit is given may constitute a debt in this State which is subject to attachment.

So too, *it seems*, that a cause of action arising upon contract may constitute a debt which is attachable as against a creditor.

APPEAL by the defendant, Occidental Trading Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 25th day of April, 1919, denying the motion of the defendant appearing specially to vacate and set aside the service of the summons herein, and also to vacate and set aside the claimed levy under the warrant of attachment.

*Maxwell Steinhardt* of counsel [*Emory R. Buckner* with him on the brief; *Root, Clark, Buckner & Howland*, attorneys], for the appellant.

*Maxwell Slade* of counsel [*David H. Slade* with him on the brief; *Slade & Slade*, attorneys], for the respondent.

SMITH, J.:

The plaintiff sues as assignee of a Connecticut corporation, the United Smelting and Aluminum Company, Inc., of which the plaintiff is the manager of the New York office. The defendant is a corporation organized and doing business in the State of Oregon. The plaintiff only claims jurisdiction of the defendant through this attachment, the assumed levy under which the defendant is here seeking to set aside. The plaintiff claims to have attached, as property of the defendant,

a credit in the National Park Bank, which credit was organized under the following conditions:

Upon the 5th day of October, 1918, the National Park Bank received from the Ladd & Tilton Bank, of Portland, Oreg., the following telegram:

" Against documents and conditions as below set out please pay United Smelting and Aluminum Company Incorporated up to an aggregate amount of Fifty seven thousand dollars stop bills of lading covering all shipments of prime western spelter must be dated and presented to us so as to reach us not later than October thirty first nineteen eighteen stop documents to consist of one negotiable and two extra copies non-negotiable railway domestic bills of lading marked for export showing fifty gross tons prime western spelter consigned to Mitsui Bussan Kaisha Limited Yokohama Japan notify Mitsui Bussan Kaisha Limited Tokio Japan applying shipments against license number thirty two fifty nine sixty five stop show this license number on all documents including bills of lading for this lot mark M. B. K. Tokio stop two hundred gross tons prime western spelter consigned to Mitsui Bussan Kaisha Limited Kobe Japan notify Mitsui Bussan Kaisha Limited Osaka Japan applying shipments against license number thirty two fifty nine sixty six stop show this license number on all documents including bills of lading stop for this lot mark M. B. K. Osaka stop all bills of lading for above two hundred fifty gross tons prime western spelter must show cars shipped to port Commission Smiths Cove Dock Seattle Washington in care of James Griffiths and Sons stop show on all documents including bills of lading both lots ocean freight contract number eight sixty eight with James Griffiths and Sons Seattle Washington stop J E A railway permit number will be telegraphed later separately stop price ten cents per pound f. o. b. cars east St. Louis Missouri stop not less than minimum  carload shipment to be made stop all freight charges collect and to follow shipment stop shippers to make out all bills of lading to their own order and endorse to the Occidental Trading Company Portland Oregon stop all bills of lading must reach us on or before October thirty-first nineteen eighteen stop invoices in triplicate direct to the Occidental Trading Company stop instructions must

be met absolutely and no cars are to be forwarded as regular domestic shipments."

Upon the 8th day of October, 1918, the National Park Bank received a further telegram from the Ladd & Tilton Bank:

" Your telegram fifth United Smelting and Aluminum Company and further referring our telegram October fourth credit irrevocable against presentation documents but must be in our hands by October thirty first nineteen eighteen account expiration export license stop bills of lading to be made out to United Smelting and Aluminum Company endorsed to Occidental Trading Company but instead of consigned to Mitsui Bussman Kaisha Limited at destinations shown in our telegram fourth we will accept on fifty tons primes western spelter notify Mitsui Bussman Kaisha Yokohama and Tokio stop on two hundred tons prime western spelter we will accept notify Mitsui Bussan Kaisha Kobe and Osaka."

Upon the 11th day of October, 1918, the National Park Bank received still a further telegram which reads as follows:

" Referring our night letter October fourth setting up credit United Smelting and Aluminum Company Incorporated for account Occidental Trading Company advise that Smelting Company have not accepted terms of credit according to wires received by Occidental Trading Company also ourselves stop all terms our credit must be complied with stop documents must be forwarded under requirements of letter of credit so as to arrive here not later than October thirty first stop we understand embargo on export shipments into Seattle stop our client cannot furnish J E A Railway permit number as Government order prevents export shipments through Seattle stop United Smelting and Aluminum Company persist wire us direct to allow Middle November for arrival of documents but no change in terms our letter possible stop cannot handle straight domestic shipments without bills lading marked for export and without J E A permit number."

Pursuant to the directions so given, the National Park Bank opened a credit to be drawn against under the terms specified in the telegrams.

The Code of Civil Procedure, by section 648, authorizes

an attachment to be levied upon a cause of action arising upon a contract. It has thus been held that this cause of action constitutes a debt, which, if owing upon the cause of action, is attachable property as against a creditor.

In Drake on Attachments (4th ed. § 544) in speaking of garnishments, it is said: " That upon which the garnishment operates in this class of cases is credits. The term credit, in this connection, is used in the sense in which it is understood in commercial law, as the correlative of debt. Wherever, therefore, there is a credit, in this sense, there is a debt, and without a debt there can be no credit."

It may be held that an unrestricted credit subject unconditionally except as to amount to any draft drawn by the person to whose favor the credit is given may constitute a debt, which is subject to attachment. The plaintiff here meets two difficulties, however. In the first place, this is not a credit given to the defendant. The defendant is entitled to the moneys under no possible circumstances. The moneys are to be paid to the United Aluminum Company upon presentation of certain documents. In the second place, this credit was not unrestricted. The moneys were payable by the National Park Bank only upon presentation of certain documents which confessedly were never presented. In fact, no credit is given, until the proper documents are presented. So, there never was in the National Park Bank any credit which could be drawn against by any one, or which was subject to attachment.

It is claimed, however, that this defendant is not interested to set aside this attachment, if, as it claims, upon this motion, there is no credit in the National Park Bank upon which the attachment operates. But this is not a species of property which can be owned by any other person and which that person could protect. It is a property concerning which, if by any chance the attachment be held good, a liability might be claimed to be created, *first,* against the Ladd & Tilton Bank, and *secondly,* with the ultimate liability of this defendant to pay the same. The natural inference is that the defendant has either deposited securities with the Ladd & Tilton Bank or has pledged its credit and the attachment has thus become a cloud upon the title of those securities,

or upon the credit pledged which the defendant is interested to remove. The motion is not only to set aside the attachment, but to set aside the summons and complaint, and the interest of the defendant is in my judgment sufficient to authorize the making of the motion to remove any cloud, created by the levy, as affecting defendant's ultimate liability for reimbursement to the Ladd & Tilton Bank. (See *Bridges v. Wade,* 113 App. Div. 350.)

The order should be reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.

CLARKE, P. J., LAUGHLIN, PAGE and PHILBIN, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.